531 P.2d 1226 (1975)
87 N.M. 253
In the Matter of the ADOPTION OF Jane DOE, a minor.
John and Mary DOE, Petitioners-Appellants,
v.
Ann ROE, Intervenor-Appellee.
No. 1536.
Court of Appeals of New Mexico.
January 15, 1975.
Certiorari Denied February 13, 1975.
Larry N. Smith, Moore & Smith, Los Alamos, Seth D. Montgomery, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, for petitioners-appellants.
Prentis R. Griffith, Jr., Griffith & Griffith, White Rock, for intervenor-appellee.

OPINION
HENDLEY, Judge.
Petitioners, the prospective adoptive parents, filed a petition to adopt a minor child pursuant to the Adoption Act, §§ 22-2-20 through 22-2-35, N.M.S.A. 1953 (Supp. 1973). Attached to the petition was a sworn "Consent of Natural Mother to Adoption" which recited that the natural mother (1) had been fully advised of her rights in regard to the future custody of the child, (2) had voluntarily relinquished all future rights to the custody, (3) had voluntarily consented to the adoption by persons selected by her physician, (4) had voluntarily consented without disclosure of the names of the adopting parents, (5) had ratified and confirmed the adoption and (6) was twenty-four years of age.
*1227 Approximately one month after the consent was signed, the natural mother filed a Motion to Intervene as a matter of right pursuant to § 21-1-1(24)(a), N.M.S.A. 1953 (Repl.Vol. 4, 1970). Attached was a "Petition for Leave to Revoke Consent to Adoption" which stated in part:
"5) That on November 28, 1973, in the afternoon hours, while Petitioner was still a patient at the hospital and less than twenty four (24) hours after the baby was born, Petitioner was approached by ... a Los Alamos attorney, who asked Petitioner if she would sign a Consent to Adoption of the child by persons then unknown and presently unknown to Petitioner.
"6) That Petitioner, although extremely upset and in tears, signed the Consent to Adoption on November 28, 1973, before a Notary Public of the State of New Mexico and that Petitioner does not have a copy of said Consent to Adoption;
"7) That the act of signing the Consent to Adoption by Petitioner was not a free and voluntary act in that it was signed at a time much too soon after birth, while she was hospitalized and while she was in a state of emotional upset obvious to everyone present and that, therefore, the Consent to Adoption was void ab initio;"
The petitioners moved to have the court deny the natural mother's motion to intervene on the ground that her petition failed to allege fraud and thus did not state a cause of action upon which relief could be granted. The natural mother specifically disavowed any reliance on fraud. The trial court denied the motion of petitioners and by a Memorandum Decision found that the natural mother's petition raised a factual issue as to whether the consent was "intelligently and voluntarily" given and that § 22-2-27(D), supra, did not bar the natural mother from a hearing on that issue. We granted petitioners' application for an interlocutory appeal pursuant to § 21-10-3, N.M.S.A. 1953 (Repl.Vol. 4, 1970, Supp. 1973).
Section 22-2-27(D), supra, states:
"D. A consent to adoption cannot be withdrawn after the entry of a judgment of adoption. A consent to adoption may not be withdrawn prior to the entry of a judgment of adoption unless the court finds, after notice and opportunity to be heard is afforded to the petitioner, the person seeking the withdrawal, and any agency or the department placing a minor for adoption, that the consent was obtained by fraud."
Petitioners contend that: (1) absent an allegation of fraud, a natural parent cannot contest her consent as being involuntary; and (2) even if the natural parent may so contest the petition, the instant petition does not state a cause of action upon which relief can be granted.
We reverse.
It should be noted at the outset that the area of withdrawal of consent to adoption is a highly emotional one, fraught with agonizing conflicts among the interests at stake. There is the initial trauma of the natural parent deciding upon and signing the consent. The emotional situation is further complicated when, after custody and care of the child has been transferred, the natural parent attempts to revoke the consent. Add the fact that this very human and emotion-charged situation has its ultimate resolution in courts of law where the process is necessarily adversary, and it becomes a most difficult task to balance the interests involved, i.e. those of the prospective adoptive parents who are caring for the child, those of the natural mother who bore the child and then consented, for a variety of reasons, to the adoption, and those of the child whose interests are foremost.
Since the adoption of children is solely a creature of statute, unknown to the common law, Heirich v. Howe, 50 N.M. 90, 171 P.2d 312 (1946), it is important to note that our legislature has seen fit to *1228 provide but a single ground for the revocation of consent, namely, fraud. It did not see fit to provide any period of grace for withdrawal of consent. Nearly all other states' statutes permit withdrawal of consent virtually at the court's discretion. See Revocation of Parental Consent and Adoption Proceedings, 8 Columbia Journal of Law and Social Problems 156 (1972). Our legislature has created a presumption that once there has been a consent by the natural parent, absent fraud, it is in the best interests of the child to proceed with the adoption.
The natural mother contends that the legislature could not have intended to make fraud the sole ground for withdrawal of consent. She cites several hypothetical situations, e.g. signing the consent under threat of death and signing the consent while under sedation to the point of lack of total comprehension. However, she does not allege the applicability of these situations to herself. It is therefore unnecessary to decide whether in all cases that do not allege fraud a claim is stated if the allegation is involuntariness of consent.
In the instant case it was plead that the consent was involuntary in that it was signed too soon after birth, while in the hospital, and while in a state of emotional upset. Section 21-1-1(8), N.M.S.A. 1953 (Repl.Vol. 4, 1970) states that it is sufficient to plead generally a claim for relief. However, once a pleader pleads specifically, he will be held to what has been specifically plead. Martinez v. Cook, 56 N.M. 343, 244 P.2d 134 (1952). Although a plea of involuntariness may be sufficient to withstand a motion to dismiss, an issue we do not decide, the natural mother, having plead facts, will be held to those facts. Martinez v. Cook, supra.
Thus, the issue is whether the foregoing plead facts of (1) emotional upset, (2) hospitalization and (3) timeliness after birth support the natural mother's claim of involuntariness.
These three facts are all akin to the "duress of the circumstances" as discussed in Barwin v. Reidy, 62 N.M. 183, 307 P.2d 175 (1957). Emotional upset will usually be a factor when a natural parent consents to the adoption of her child. Likewise, signing of the consent in the hospital and soon after birth are attendant circumstances not unusual in the signing of a consent to adopt. These factors standing alone are insufficient, as a matter of law, to void a consent. To do so would mean that nearly all consents to adoptions would be voidable. See Barwin v. Reidy, supra. Additionally, to hold the three factors alleged sufficient to void a consent would be to provide a "grace period" for revocation of consent where none has been provided by the legislature. A reading of the Adoption Act as a whole reveals a legislative intent to presume that the best interests of the child would be served by adoption. We feel this to be the situation since the prospective adoptive parents are normally actively seeking to adopt a child and the natural mother by the signing of a consent, absent fraud, is taking an affirmative step to see that the child is adopted.
Accordingly, we hold the petition fails to state a claim upon which relief can be granted. The decision of the trial court is reversed and we remand with instructions to dismiss the natural mother's petition.
LOPEZ, J., concurs.
HERNANDEZ, J., dissents.
HERNANDEZ, Judge (dissenting).
I respectfully dissent. In my opinion, Section 22-2-27(D), supra, should be read as if the word, "valid," were inserted before the word, "consent," in the first sentence, and between the words "A," and "consent," in the second. To interpret the statute otherwise compels a conclusion that the only ground for attacking a consent to adoption is fraud. In my opinion, the interpretation made by the majority implies a legislative purpose far more stringent and inflexible than was intended.
Such an interpretation would result in a mother's inability to challenge the validity of her consent even where the mother's *1229 consent is obtained at a time when she is under the influence of medication which seriously impairs her ability to make a rational decision, but the full extent of her condition is not known to the person obtaining the consent; or where the mother lacks sufficient intelligence to understand the full portent of the act she is performing, but her subnormality is not known to the person obtaining the consent.
My disagreement with the majority in this is made all the more resolute in light of the strict requisites for proving fraud.
"The essential elements required to sustain an action for fraud, are that a representation was made as a statement of fact which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that the other party did in fact rely on it and was induced thereby to act to his injury or damage. [Citations Omitted.] There must be a concurrence of all of these essential elements and without this there can be no actionable fraud. None of these elements can be presumed, but each must be shown by clear and convincing evidence." [Emphasis mine.] Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134 (1962).
There are numerous situations in which the law requires that inquiry must be made as to the competency of an individual to accomplish a variety of legally significant acts, i.e., competence to execute wills, competence to enter contracts, competence to make gifts, competence to be held criminally responsible and stand trial, and competence to waive constitutional or other significant rights. Certainly consent to adoption ranks in legal significance with any of these acts.
"The relationship between parent and child is a bundle of human rights of such fundamental importance that it is generally held that consent is at the very foundation of adoption statutes and that adoption statutes being in derogation of common law are to be construed strictly in favor of the parent and the preservation of the relationship." [Emphasis added.] Nevelos v. Railston, 65 N.M. 250, 335 P.2d 573 (1959).
It is my opinion that the trial court acted properly in granting the motion for leave to intervene.