883 P.2d 149 (1994)
118 N.M. 563
STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT in the Matter of KIRA M., a Child, Petitioner-Petitioner,
And Concerning Michelle B., Respondent-Respondent.
No. 21721.
Supreme Court of New Mexico.
October 4, 1994.
*151 Tom Udall, Atty. Gen., Roy E. Stephenson, Diane Garrity, Judith A. Ferrell, Sp. Asst. Attys. Gen., Santa Fe, for petitioner.
Richard J. Grodner, Albuquerque, for respondent.
Rodey, Dickason, Sloan, Akin & Robb, P.A., Patricia M. Taylor, Albuquerque, Guardian ad Litem.
Peter H. Klages, Albuquerque, for NM Children, Youth & Families Dept.

OPINION
FROST, Justice.
We granted certiorari to review an opinion of the Court of Appeals, In re Kira M., 116 N.M. 514, 864 P.2d 803 (Ct.App.1993), deciding that relinquishment of parental rights and consent to adoption may be withdrawn on grounds that consent was involuntary and thus ineffective. Id. at 518, 864 P.2d at 807. Contrary to the conclusion reached by the Court of Appeals, we discern no legislative intent to expand the grounds for withdrawal of relinquishment or consent beyond that of fraud, the single ground expressly stated in the Adoption Act, NMSA 1978, §§ 40-7-29 to -61 (Repl.Pamp.1989) (amended and recodified as NMSA 1978, §§ 32A-5-1 to -45 (Repl.Pamp.1993)).

FACTS AND PROCEEDINGS
Kira, now eleven years old, has been in the custody of the Department of Human Services (HSD) since August 1991. Her natural parents are divorced and remarried to new spouses. Kira first came to HSD's attention in May 1990, when HSD found she had been subjected to excessive discipline and emotional abuse in the home of her mother and stepfather. HSD attempted to address the problem in the family setting, but ultimately Kira was admitted to a psychiatric hospital for counseling and treatment. After her discharge she went to live with her natural father and stepmother. About nine months later, her father and stepmother informed HSD they could no longer endure the stress of having Kira in their home. Kira's mother and stepfather also were unwilling to have the child live with them. After both of her parents rejected her, the children's court placed Kira in custody of HSD who placed her in the home of a specially trained foster parent. Several months later Kira's parents refused to participate in any further attempts to keep the family together, and they stated that they wished to relinquish their parental rights to the child and have HSD place her for adoption.
In November 1991, Kira's parents appeared before the children's court and signed documents relinquishing their parental rights to HSD and consenting to Kira's adoption. After a lengthy inquiry, the documents were accepted and certified by the children's court judge. The record shows that Kira's mother received extensive counseling regarding the consequences of relinquishing her parental *152 rights, and that HSD and the children's court judge took great pains to ensure that the relinquishment was her own freely-made decision. Six months later, however, Kira's mother filed a motion to revoke or withdraw her relinquishment of parental rights and consent to adoption. Mother's motion contained no allegations of fraud, but alleged she had signed the relinquishment under threats from her husband (Kira's stepfather) that overrode her free will and desire.
After Mother's motion to withdraw her consent, HSD filed a motion to dismiss for failure to state a claim upon which relief may be granted, or for summary judgment based on the specific allegations contained in Mother's motion and supporting affidavit. After a hearing on all motions, the children's court denied Mother's motion, stating that there was no genuine issue of material fact, and concluding that there was no sufficient basis to void the relinquishment.
Mother appealed this decision and the parties stipulated to a stay of any proposed adoption proceedings for the child.[1] A divided panel of the Court of Appeals reversed the order of the children's court. In re Kira M., 116 N.M. at 519, 864 P.2d at 808. Noting issues of substantial public interest, we granted certiorari. We reverse the Court of Appeals and affirm the order of the children's court.

DISCUSSION
The New Mexico Adoption Act provides that "consent to or relinquishment for adoption shall not be withdrawn prior to the entry of a judgment of adoption unless the court finds ... that the consent or relinquishment was obtained by fraud." NMSA 1978, § 40-7-38(F) (Repl.Pamp.1989) (recodified as Section 32A-5-21(I) (Repl. Pamp.1993)). This provision is the only expressly-stated ground in the Adoption Act upon which to base the withdrawal of parental consent prior to the entry of a final decree of adoption.[2]
The Adoption Act also requires that the consent or relinquishment document signed by the parent "state ... that the person executing the consent or relinquishment has been counseled [by a qualified professional] regarding alternatives to adoptive placement and with this knowledge is voluntarily and unequivocally consenting to the adoption of the named adoptee." NMSA 1978, § 40-7-38(A)(4) (Repl.Pamp.1989) (amended in part and recodified as Section 32A-5-21(A)(5) (Repl.Pamp.1993)). The latter requirement is part of a series of provisions added to the Adoption Act in 1985 and enlarged upon in 1993, presumably to insure that a relinquishment of parental rights is free, voluntary, and well informed.[3]
*153 The issue, as we see it, is whether in adding the various provisions regarding the form of the required written consent document under Section 40-7-38(A), the legislature intended to enlarge the grounds upon which to invalidate parental consent once given and accepted by the children's court. The Court of Appeals found an apparent inconsistency between Section 40-7-38(A)(4) and Section 40-7-38(F) and stated that "equal effect must be given to all parts of Section 40-7-38." 116 N.M. at 517, 864 P.2d at 806. The Court concluded that despite the initial acceptance and certification of the consent document by the children's court, the court was required to determine at an evidentiary hearing whether the consent was involuntary and, therefore, not in compliance with Section 40-7-38(A)(4). Id. at 518, 864 P.2d at 807.
The legal power to adopt children is entirely a creature of statute since adoption was unknown at common law. Heirich v. Howe, 50 N.M. 90, 92, 171 P.2d 312, 313 (1946). Consequently, the procedures for the relinquishment of parental rights and subsequent adoption of children is an area particularly within the province of the legislature, where in a sound expression of public policy the state has sought to provide for the welfare of the children involved. Thus, the interpretation of these statutes should be guided by their fundamental purpose which is to determine and further the best interests of the children involved. See Barwin v. Reidy, 62 N.M. 183, 190, 307 P.2d 175, 180 (1957). After a relinquishment of parental rights to HSD the children are wards of the state. See id. at 191, 307 P.2d at 180. It follows that the state has an important interest in the finality and stability of these proceedings.
Early versions of New Mexico Adoption Act contained no specific grounds for the withdrawal or revocation of parental consent to adoption. See generally NMSA 1953, §§ 22-2-1 to -19. In Barwin, one of our earliest decisions addressing the validity and revocability of consent to adoption, we suggested a discretionary standard: "The better authority is that prior to the entry of an adoption decree, the court may grant or refuse revocation of consent giving due consideration to the circumstances of the particular case ... and all those matters pertaining to the past, present and future welfare of the child." 62 N.M. at 198, 307 P.2d at 185.
In 1971, the New Mexico legislature limited judicial discretion in this area by amending the Adoption Act to state but a single ground for the revocation of a relinquishment of parental rights or the consent to adoption: fraud. NMSA 1953, § 22-2-27(D) (Supp.1975). Although the effect of this provision if strictly applied might be viewed as unnecessarily harsh under some circumstances, the new provision was undoubtedly intended to increase the stability of adoption proceedings.[4] In discussing *154 NMSA 1953, Section 22-2-27(D), the Court of Appeals has correctly acknowledged that the legislature has created a presumption that once a natural parent has consented to adoption, absent fraud, it is in the best interests of the child to proceed with the adoption. In re Adoption of Doe, 87 N.M. 253, 255, 531 P.2d 1226, 1228, cert. denied, 87 N.M. 239, 531 P.2d 1212 (1975). Although the legislature has amended the Adoption Act in numerous respects since 1971, the statutory limitation originally embodied in NMSA 1953, Section 22-2-27(D) has been retained by the legislature essentially unchanged. See NMSA 1978, § 40-7-38(F) (Repl. Pamp.1989); NMSA 1978, § 32A-5-22(I) (Repl.Pamp.1993).
After the 1971 amendments to the Adoption Act, the question was directly raised in Doe whether the New Mexico legislature intended to make fraud the sole ground for withdrawal of consent. 87 N.M. at 255, 531 P.2d at 1228. The Court of Appeals, however, declined to decide that question and held instead that the specific facts alleged by the mother were insufficient, as a matter of law, to void her consent on the ground that it was involuntary. Id. The dissent in that case argued that the consent of the parent must be "valid," and that to interpret the statute to make fraud the sole ground upon which to base revocation of consent would imply a far more stringent and inflexible standard than was intended by the legislature. Id. (Hernandez, J., dissenting).
The question left unanswered by the opinion of the Court of Appeals in Doe is in essence the same one before this Court today. For the following reasons, we think that despite extensive amendment to the Adoption Act mandating procedures to ensure that every consent to adoption is made freely, voluntarily, and knowingly, the legislature has not authorized the withdrawal of consent or relinquishment on grounds other than fraud.
First, Section 40-7-38(F) is absolutely clear in its language and admits of no ambiguity. The provision succinctly states that prior to the entry of a decree of adoption a relinquishment or consent to adoption shall not be withdrawn unless the court finds it was obtained by fraud. NMSA 1978 § 40-7-38(F). Given this clear and unequivocal language, the judiciary is not free to insert additional grounds into the statute upon which to premise the withdrawal of consent. See State ex rel. Barela v. New Mexico State Bd. of Educ., 80 N.M. 220, 222, 453 P.2d 583, 585 (1969) (court not permitted to read into a statute language that is not there if statute makes sense as written).
We note that in amending the Adoption Act the legislature has had numerous opportunities to include other grounds in addition to fraud upon which to premise withdrawal of consent. Possibilities would include duress, undue influence, coercion, mistake, error, or lack of understanding. See generally 2 Am.Jur.2d Adoption § 100 (1994). It is significant that all of these separate grounds may indicate that consent to adoption was not voluntary. See, e.g., In re Adoption of Hewitt, 396 N.E.2d 938, 941 (Ind.Ct.App.1979) ("Voluntary, in the sense of executing a consent, implies an act of one's own volition, free from duress, fraud, or other consent-vitiating factors, and with knowledge of essential facts."); In re Adoption of Infant Girl Banda, 53 Ohio App.3d 104, 559 N.E.2d 1373, 1378 (1988) ("It is generally well-established that fraud, duress, undue influence, overreaching, mistake, or the like will justify a court in finding that consent was not freely and voluntarily executed").[5] *155 We presume the legislature is aware of existing law when it enacts legislation. See V.P. Clarence Co. v. Colgate, 115 N.M. 471, 474, 853 P.2d 722, 725 (1993). By not including any of these other recognized grounds for withdrawal we believe the legislature specifically intended to limit the grounds upon which consent or relinquishment may be withdrawn to that of fraud. While we recognize that the legislature has substantially amended the Adoption Act to include numerous remedial requirements in subparagraph (A) of Section 40-7-38, we discern no legislative intent to authorize withdrawal of consent on the general grounds that it was not voluntarily given. To the contrary, the clear language of Section 40-7-38(F) states that a consent to or relinquishment for adoption "shall not be withdrawn ... unless ... the consent or relinquishment was obtained by fraud." In contrast, Section 40-7-38(A) requires only that the signed consent document state that the person executing the document has received certain counseling and with this knowledge they voluntarily consent to the adoption of the child.
In comparing Section 40-7-38 subparagraph (A) with subparagraph (F), we fail to see the "inconsistency" between them noted by the majority of the panel of the Court of Appeals. Rather, we agree with HSD that these provisions were intended to establish a two-step statutory process to ensure protection of the parents' rights in the process leading up to the relinquishment and protection of child's welfare once the relinquishment has taken place. In the first stage, the parents' rights are protected by providing safeguards to ensure relinquishment is free, voluntary, and made with full knowledge of the consequences. In this regard the parents must be counseled by a qualified professional regarding alternatives to adoption and the parents are informed their consent cannot be withdrawn. NMSA 1978, § 40-7-38(A). Additionally, the consent or relinquishment document must be signed before and approved by a judge having jurisdiction over adoption proceedings, or by an individual appointed to take consents by an agency licensed to place children for adoption. NMSA 1978, § 40-7-39 (Repl.Pamp.1989) (recodified as NMSA 1978, § 32A-5-23 (Repl.Pamp.1993) (amended to require representation by independent counsel if consent is taken by licensed agency)). During this process parents have many opportunities to privately express any reservations they may have, or to reveal any coercive influences. In the second stage, after acceptance and certification of the consent or relinquishment document, the focus shifts from the protection of parental rights to protection of the child's best interests by severely limiting the grounds for withdrawal. See Doe, 87 N.M. 253, 255, 531 P.2d 1226, 1228. Section 40-7-38(F) recognizes the one circumstance, fraud, that reasonably might not be detected at the voluntariness review stage.
There are substantial public policy grounds for this interpretation. Once the relinquishment occurs, the child commences a grieving process potentially involving shock, anger, guilt, self-blame, and depression. With the adjustment to the loss of natural parents comes preparation of the child for adoption in order to establish new supportive family relationships. We accept HSD's arguments that to reverse this process could be emotionally devastating to the child and not in the child's best interest.
With regard to the facts of this case, we believe there is ample evidence in the record to support the conclusion that Mother's relinquishment and consent to adoption was indeed free and voluntary. Mother signed the consent document in court where she appeared with independent legal counsel. The children's court judge concluded that she was signing the document voluntarily, knowingly, and intelligently only after an extended inquiry to satisfy himself that the relinquishment was not the result of promises, threats, or coercion and that she fully understood the consequences of her actions. See In re Kira M., 116 N.M. at 520, 864 P.2d at 809 (Black, J., dissenting). At one point the judge indicated that the counseling narrative prepared *156 by HSD suggested she might be equivocating regarding her decision, and he asked if this was still the case. She responded, "No sir. I believe it would be in the best interests of Kira."
The hearing on Mother's motion to withdraw her consent was heard before the same children's court judge who had accepted and certified the consent document in the first instance. In hearing the motion to withdraw or revoke Mother's consent, this judge certainly was not required to ignore his earlier inquiries, Mother's previous testimony, and the fact that she had signed the document in his presence. Persons who are present at the time a consent document is executed, including a judge, are in a position to testify as to the circumstances under which consent is given. See, e.g., In re S., 572 P.2d 1370, 1373 (Utah 1977) (judge before whom consent was executed testified as to whether consent was given freely and voluntarily). A consent or relinquishment document accepted and approved in court should not be easily set aside.
We hold that after the children's court has accepted and certified a relinquishment of parental rights and consent to adoption, and has satisfied itself that all requirements have been met, the only ground upon which a person is entitled to withdraw that consent is upon proof of fraud. We think the legislature has limited the grounds for revocation to fraud in a sound expression of public policy in order to bring a high degree of certainty, finality, and stability to adoption and relinquishment proceedings.
Nevertheless, the children's court does have the ability under its reservoir of equitable power to protect the interests of natural parents in exceptional cases. See SCRA 1986, Rule 1-060(B)(6) (relief from judgment or order); Perez v. Perez, 75 N.M. 656, 660, 409 P.2d 804, 807 (1966). Thus, while we recognize that the legislature has not authorized revocation on grounds other than fraud, we also recognize that the children's court has the power to grant the request of a natural parent to withdraw consent under exceptional circumstances falling outside the specific grounds enunciated in Section 48-7-38(F). Any such order must, of course, be consistent with the best interests of the child, which must be given paramount consideration. We see no exceptional circumstances here, where the child's mother waited six months to seek the withdrawal.
For the first time on appeal, Mother raises a claim that if Section 40-7-38(F) allows withdrawal of consent only when induced by fraud, it violates the due process clause of both the United States and New Mexico Constitutions. Mother's argument on this point is limited to a brief discussion of two criminal cases that stand for the proposition that due process is violated by the involuntariness of a confession, see State v. Turnbow, 67 N.M. 241, 253, 354 P.2d 533, 539 (1960), or by a guilty plea induced by threats or coercion, see State v. Ortiz, 77 N.M. 751, 754, 427 P.2d 264, 266 (1967). No argument is made that Section 40-7-38(F) is devoid of rational support or fails to support a compelling state interest.
While we are reluctant to address issues raised for the first time on appeal we are not precluded from doing so. See SCRA 1986, 12-216 (Repl.Pamp.1992) (rule requiring party to first raise issue in district court does not preclude discretionary appellate review of questions of general public interest, fundamental error or fundamental rights of party). Here, we think it important to note only our general agreement with the points made by Judge Black regarding Mother's constitutional claim. See In re Kira M., 116 N.M. at 522-23, 864 P.2d at 811-12 (Black, J., dissenting). Significantly, the alleged threats or coercion in this case were not made by the state or any of its agents. Even assuming that the analogy to involuntary confessions or guilty pleas in criminal cases is apt, Mother's allegations lack any "state action" to support the claim of a due process violation. See Colorado v. Connelly, 479 U.S. 157, 165-67, 107 S.Ct. 515, 520-22, 93 L.Ed.2d 473 (1986) (absent police *157 misconduct, there is no basis for concluding that any state actor deprived criminal defendant of due process of law).

CONCLUSION
For the foregoing reasons we reverse the Court of Appeals and affirm the order of the children's court denying Mother's motion to revoke or withdraw her relinquishment and consent to adoption.
IT IS SO ORDERED.
MONTGOMERY and FRANCHINI, JJ., concur.
NOTES
[1] While Kira's foster parent has expressed a continuing interest in adopting Kira, no petition for adoption had been filed at the time Mother sought to revoke her relinquishment and consent to adoption. About a month after Kira was freed for adoption she was again hospitalized, this time for treatment of major depression. At the time of the first six-month judicial review in April 1992, there was still a possibility that Kira could need long-term residential treatment. Her treatment plan adopted at that time called for continuing assessment of her readiness for adoption.

During the course of this appeal the position of Kira's guardian ad litem has been that Kira's best interests would not be served by the revocation of Mother's consent to adoption. The guardian ad litem has stated that Kira has bonded with her foster mother and would like to be adopted by her, and to interrupt and reverse this process would be emotionally devastating to the child.
[2] Section 40-7-38(F) also states that after the entry of a final decree of adoption "[i]n no event shall a consent or relinquishment be withdrawn."
[3] The entire text of Subparagraph (A) of Section 40-7-38 is as follows:

A. Except for a consent or relinquishment implied by Section 40-7-36 NMSA 1978, a consent or relinquishment shall be in writing, signed by the person consenting or relinquishing and shall state the following:
(1) the date, place and time of execution;
(2) the date and place of birth of the adoptee and any names by which the adoptee has been known;
(3) the name of the petitioner, if known, unless the document is a relinquishment of the adoptee to an agency, in which case, the name and address of the agency to whom the adoptee is relinquished;
(4) that the person executing the consent or relinquishment has been counseled regarding alternatives to adoptive placement and with this knowledge is voluntarily and unequivocally consenting to the adoption of the named adoptee, except that an alleged biological father, after being advised of his right to counseling and offered the counseling, may specifically decline such counseling in the consent or relinquishment; the counseling shall be provided by a certified psychologist, psychiatrist or person with a master's degree in social work or by an agency or an individual with qualifications established by department regulation and the consent or relinquishment shall state the name of the person who provided the counseling and the nature and duration of the counseling;
(5) that the consent to or relinquishment for adoption cannot be withdrawn;
(6) that the person executing the consent or relinquishment has received or been offered a copy of the consent or relinquishment; and
(7) that the person executing the consent or relinquishment waives further notice of the adoption proceedings.
NMSA 1978, § 40-7-38 (Repl.Pamp.1989).
These provisions were amended, effective July 1, 1993, to include provisions that: (1) the person executing the consent or relinquishment has been counseled by a certified counselor of their choice; (2) the consenting party has been advised of the legal consequences of the relinquishment or consent either by independent legal counsel or a judge; and (3) a counseling narrative has been attached to the consent or relinquishment document. NMSA 1978, § 32A-5-21(A) (Repl.Pamp.1993).
[4] Attempts to revoke consent to adoption have produced a great deal of litigation. See 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States, § 21.5 at 618 (1987). Thus, it is not surprising that a number of state legislatures have taken steps to define and limit both the grounds upon which revocation may be based, and the time within which to raise a legally-sufficient claim. E.g., Minn.Stat. § 259.24(6a) (1992) (after expiration of 10 working days from execution of consent to adoption, wherein consent is revocable at will, consent becomes irrevocable unless obtained by fraud); Ill. Compiled Stat. ch. 750, act 50, § 11 (1992) (consent irrevocable unless induced by fraud or duress by the person taking consent, the adopting parents or their agents); see also 14 Causes of Action, Cause of Action to Withdraw or Revoke Parental Consent to Adoption 817, § 21 (survey of statutory provisions regarding withdrawal of consent to adoption).
[5] Indeed, interpreting Section 40-7-38(A)(4) as authorizing withdrawal on the general grounds that consent was "involuntary" begs the question of whether or not any or all of the specific grounds we have mentioned in the body of this opinion would state a claim for withdrawal. In addition to making the specific mention of fraud as a basis for withdrawal superfluous, which is itself good reason to avoid such an interpretation, see Vaughn v. State Taxation & Revenue Dep't, 98 N.M. 362, 365-66, 648 P.2d 820, 823-24 (Ct.App.1982), we think that the uncertainty that would be engendered by such an interpretation is exactly what the legislature intended to avoid by stating one specific ground for revocation of consent.