**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DENNIS RAY PETSCHE,

Petitioner-Appellant,

v.

LAWRENCE TAFOYA, Warden,
Southern New Mexico Correctional
Facility; ATTORNEY GENERAL
FOR THE STATE OF NEW MEXICO,

Respondents-Appellees.

No. 03-2275
(D.C. No. CV-00-1736-MV/LCS)
(D. N.M.)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Dennis Ray Petsche, a state prisoner in New Mexico, appeals the denial of his petition for a writ of habeas corpus. We affirm.

I.

In September 1995, Petsche was charged by indictment with eight counts of child abuse and two counts of aggravated battery. Two years later, Petsche pled no contest to four counts of the indictment. These counts alleged that (a) Petsche committed child abuse against his daughter, Sarah Dawn Petsche, by intentionally or negligently causing her death (Count 1); (b) Petsche committed child abuse against another daughter, Sara Ann Petsche,[1] by intentionally or negligently fracturing her rib (Count 3); (c) Petsche again committed child abuse against Sara Ann, this time by bruising her (Count 6); and (d) Petsche battered his wife, Iris Petsche (Count 9). For these offenses, Petsche received a total sentence of 42 years imprisonment, (later reduced to 37.5 years). The remaining counts of the indictment were dropped, pursuant to Petsche's plea agreement.

Before he was sentenced, Petsche filed a pro se motion to withdraw his plea. He asserted in his motion that he was actually innocent and that his plea was induced by (a) a desire to avoid a severe sentence (possibly including the death penalty) and (b) on-going threats to his life in the county jail, which he

---

[1]     Sara Ann Petsche's name appears as "Sarah" in some materials in the record, but Petsche's pleadings use the spelling "Sara."

hoped would abate after he was transferred to state custody to serve out his sentence. The court orally denied this motion at Petsche's sentencing hearing, concluding that the plea was voluntary and was supported by a substantial factual basis. After announcing this ruling, the court invited counsel to address the issue. The transcript reflects that Petsche's attorney, Kathleen Rhinehart, responded: "With respect to that matter, I was worried that Mr. Petsche had pulled that. I didn't want to bring it to [the] attention of the Court." R. Vol. 2, Tr. of Mar. 12, 1998, at 2.

After he was sentenced, Petsche filed a habeas corpus petition in state court. As amended, this petition alleged that Rhinehart provided ineffective assistance by (a) failing to assert Petsche's right to a speedy trial; (b) performing an inadequate investigation of the facts of Petsche's case and the possible defenses, which in turn caused Rhinehart to give Petsche ill-informed advice regarding his no-contest plea; and (c) failing to assist Petsche with his motion to withdraw his plea. The state court summarily denied this petition, but it subsequently granted Petsche's motion for reconsideration and held an evidentiary hearing at which Rhinehart and Petsche testified. Following this hearing, the court again denied Petsche's petition, ruling that (a) Petsche was not prejudiced by Rhinehart's failure to raise a speedy trial claim; (b) Rhinehart conducted an adequate investigation and advised Petsche competently about the consequences

of his plea; and (c) Rhinehart did not mishandle Petsche's motion to withdraw his no-contest plea. The New Mexico Supreme Court denied Petsche's ensuing certiorari petition.

Petsche then sought habeas relief in federal court. The district court appointed counsel for Petsche, who filed an amended petition reiterating the claims in Petsche's state habeas petition. A magistrate judge recommended that the court deny Petsche's amended petition. The district court adopted this recommendation. This appeal followed.

II.

In this appeal, Petsche has not pursued his claim concerning his right to a speedy trial. However, he continues to assert that Rhinehart conducted an inadequate investigation, rendering Petsche's no-contest plea involuntary, and that Rhinehart provided ineffective assistance with respect to Petsche's motion to withdraw his no-contest plea. We review the district court's decision rejecting these claims de novo. See Evans v. Ray, 390 F.3d 1247, 1250 (10th Cir. 2004).

In order to demonstrate that his attorneys were ineffective, Petsche must make two showings: First, he must show that Rhinehart performed unreasonably under prevailing professional norms. See Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, he must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." Id. at 694; see also Hill v. Lockhart, 474 U.S. 52, 59 (1985) (holding that a person alleging ineffective assistance with respect to a guilty plea must establish a reasonable probability that he would not have pled guilty if counsel had advised him adequately). Furthermore, because Petsche's claims have already been adjudicated under these standards in state court, Petsche is not entitled to federal habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

A.

We initially address Petsche's failure-to-investigate claim.

After she began representing Petsche, Rhinehart reviewed roughly four thousand pages of discovery provided by the State. She also discussed the case with Petsche to learn his response to the charges. Petsche contends that Rhinehart should have gone beyond these measures and (1) interviewed potential witnesses identified in the discovery materials, (2) contacted medical experts who might have been able to refute the inferences supporting the charges against Petsche, and (3) conferred with lawyers who had represented Petsche in two related cases. He further asserts that Rhinehart should have prepared more diligently for trial, in particular by subpoenaing witnesses. He claims that Rhinehart's failure to take

these steps caused her to underestimate Petsche's prospects for success at trial and that her advice based on this underestimation induced Petsche to plead no contest against his wishes and his best interests.

(1) *Failure to Interview Witnesses Mentioned in Discovery Materials*

The discovery materials provided to Rhinehart identified numerous people who might be able to testify for or against Petsche with respect to the pending charges. At the state habeas hearing, Rhinehart testified that she chose not to meet with these people because, based on her experience as a trial attorney, she did not expect them to deviate from the statements recorded in the discovery documents. This sort of tactical decision to limit the scope of pre-trial investigation merits "a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; see also Wiggins v. Smith, 539 U.S. 510, 525 (2003) (noting that it is reasonable for counsel to curtail her investigation if available information indicates that further inquiries would be fruitless). Accordingly, it was not unreasonable for the state court to conclude that Rhinehart performed competently in choosing not to interview witnesses whose statements were recorded in discovery materials.

In addition, Petsche has not demonstrated prejudice. In his submissions on collateral review, Petsche has described items of information that the witnesses in question *could have* provided, but he did not present testimony or affidavits from

-6-

these witnesses to show that they *likely would have* furnished Rhinehart with useful information. Thus, Petsche's suggestion that interviews with these witnesses would have been fruitful is purely speculative.

Moreover, even if Rhinehart had acquired the information described in Petsche's submissions on collateral review, it is doubtful that this would have altered her assessment of the case. As Rhinehart explained at the state habeas hearing, Petsche had two significant disadvantages in confronting the charges against him. First, one of the allegations against Petsche was that he caused Sara Ann to tear the piece of tissue connecting her tongue to the bottom of her mouth (which is called the frenulum), and information in the discovery file indicated that another child in Petsche's custody had suffered a torn frenulum; as Rhinehart observed, the fact that two children under Petsche's care had suffered the same unusual injury would give rise to a strong inference that Petsche inflicted these injuries through intentional acts of abuse. Second, Petsche could be convicted even if the State failed to prove intent because all of the child abuse charges alleged both intentional and negligent acts, in the alternative. According to Rhinehart, this combination of circumstances made it very unlikely that Petsche would achieve a favorable outcome at trial. None of the potential evidence described by Petsche would have diluted the impact of these considerations.

These circumstances suggest that Petsche likely would have pled no contest even if Rhinehart had interviewed additional witnesses. Accordingly, the state court's conclusion that Rhinehart's failure to interview witnesses caused no prejudice was reasonable.

(2) *Failure to Consult with Medical Experts*

Petsche further contends that Rhinehart should have consulted medical experts to help her interpret the physical evidence compiled by the State. In his appellate brief, he catalogs extensively the information that such experts could have provided. We have reviewed this information and we conclude, for the reasons we have just stated, that Rhinehart's failure to discover it did not prejudice Petsche.

(3) *Failure to Contact Attorneys from Related Litigation*

Prior to the prosecution giving rise to this habeas action, Petsche was involved in two other cases arising from injuries to his children. One was a lawsuit against the manufacturer of the apnea monitor that Sarah Dawn used before her death; in that suit, Petsche and his wife alleged that Sarah Dawn died as the result of an apneic episode and that, because the monitor did not work properly, the Petsches did not learn of Sarah Dawn's distress in time to save her life. The other case was a civil child abuse investigation in Colorado, which involved three children other than those listed in the New Mexico indictment.

Rhinehart did not meet with Petsche's attorneys from either of these suits. Petsche contends that Rhinehart should have attempted to examine the materials they compiled.

It is undisputed that Rhinehart had notice of these two other suits. She testified at the state habeas hearing that she remembered information from the prosecutor's file relating to the civil child abuse case, but she said she did not recall seeing any materials relating to the apnea monitor suit. The parties stipulated, however, that the prosecutor's file included materials relating to the apnea monitor litigation.

It is also clear that information relevant to Petsche's other suits *could* have been relevant in this prosecution, and we therefore assume for purposes of decision that Rhinehart performed deficiently by failing to contact Petsche's lawyers from the other suits. Nevertheless, this claim fails because Petsche has not shown a reasonable likelihood that consultation between Rhinehart and his other attorneys *would* have assisted his defense.

With respect to the apnea monitor case, information that supported the Petsches' claim would necessarily tend to refute the State's theory, which was that Petsche killed Sarah Dawn by smothering her. However, as noted above, much of this information was already in the prosecutor's file. Petsche suggests that Rhinehart could have acquired additional information by contacting his

lawyer from the apnea monitor suit (Grisham); in particular, he cites Grisham's statement (from an affidavit submitted in state proceedings) that "there was clear evidence that the infant fetal monitor was not functioning as it should." R. Vol. 2, at RP 403. But proof of defects in the monitor is not equivalent to proof that the faulty monitor led to Sarah Dawn's death. This is particularly so in light of one chilling statement that *was* included in the prosecutor's file: according to one examiner involved in the apnea monitor litigation, "Mr. Petsche messed with the off and on switch." Id. at RP 349 (quotation omitted). Therefore, Petsche has not shown that additional information about the apnea monitor suit would have aided Rhinehart in preparing Petsche's defense.

Similarly, Petsche has failed to identify material evidence that Rhinehart could have acquired from his civil child abuse attorney (Simmons). The only item he mentions is a medical report indicating that Sara Ann never suffered a cracked rib (contrary to the State's allegation in Count 3 of the indictment). The parties stipulated that this report was not included in the prosecutor's file. It does not follow, however, that Rhinehart could have acquired this report from Simmons. Indeed, we have not found any evidence in the record suggesting that Simmons possessed this report. It should also be noted that the indictment alleged (in separate counts) that Petsche inflicted multiple injuries on Sara Ann; exculpatory evidence as to one of those injuries had limited value in Petsche's defense. Thus,

Petsche has not established that contacting Simmons would have enabled Rhinehart to mount a more effective defense to the charges.

Under these circumstances, and in light of the considerations set forth above in Part II.A(1), we conclude that it was reasonable for the state court to find that Petsche did not demonstrate that any prejudice ensued from Rhinehart's failure to contact Grisham and Simmons.

(4) *Failure to Subpoena Witnesses*

Petsche alleges that he pled no contest only six days before his trial was scheduled to begin and that Rhinehart had not subpoenaed any witnesses at that point. He characterizes this as another instance of ineffective assistance. There is, however, no evidence whatsoever that Petsche believed that Rhinehart was unprepared for trial and that this consideration induced him to change his plea. Thus, Petsche has not made any showing of prejudice with regard to Rhinehart's alleged failure to subpoena witnesses.

(5) *Underestimating Petsche's Prospects at Trial*

According to Petsche, Rhinehart failed to collect a wide range of exculpatory information (as described above), and, as a consequence, she inaccurately assessed Petsche's chances of being acquitted at trial. He alleges that this faulty assessment induced him to plead no contest. While there is evidence that Petsche relied on Rhinehart's advice when he entered his plea, there

is no evidence that additional information would have altered Rhinehart's assessment of Petsche's prospects. In fact, as described above in Part II.A(1), the information underlying Petsche's ineffective assistance claim had little or no bearing on the factors that Rhinehart considered most damaging to Petsche's case. Thus, the state court's conclusion that Rhinehart provided effective assistance in advising Petsche to plead no contest was not unreasonable. Petsche therefore is not entitled to a writ of habeas corpus based on this claim.

B.

Petsche's second claim is that Rhinehart provided ineffective assistance when she failed to support his motion to withdraw his no-contest plea.

As noted above, the transcript indicates that Rhinehart disparaged the motion in open court. Rhinehart testified, however, that she did not – and would not – make comments like those recorded in the transcript. The state court did not make any specific findings on this issue, but it did state, "There is nothing really that convinces me that Ms. Rhinehart in any way abandoned [Petsche]." R. Vol. 3, at 24. We need not resolve this issue in order to decide whether Petsche is entitled to habeas relief.

Petsche's initial argument in support of this claim is that Rhinehart provided no assistance whatsoever with respect to the motion to withdraw and that he is therefore entitled to relief even if he cannot demonstrate prejudice. Br.

-12-

of Aplt. at 56 (citing United States v. Cronic, 466 U.S. 648, 659 (1984)).  This theory is not properly before us, as Petsche relied on a different argument in his state habeas petition and at the ensuing hearing; specifically, he asserted that no proof of prejudice was required because counsel operated under an actual conflict of interest.  In any event, an alleged deficiency of this nature, which applies only to a limited portion of the case, is properly analyzed under Strickland rather than Cronic.  See Bell v. Cone, 535 U.S. 685, 697-98 (2002).

In the alternative to his Cronic argument, Petsche asserts that he is entitled to relief under Strickland because he was prejudiced by Rhinehart's failure to assist him with the motion to withdraw.  In order to prevail on this argument, Petsche must demonstrate that there was a reasonable probability that Rhinehart's assistance would have led to a favorable outcome on the motion.  See Hines v. Miller, 318 F.3d 157, 163 (2d Cir. 2003).

Under New Mexico law at the time of Petsche's plea, a defendant was permitted to withdraw his plea if it was "induced by threats, [or] entered without the benefit of counsel, . . . [or if] he asserted his innocence and stated a defense." State v. Clark, 772 P.2d 322, 326 (N.M. 1989), overruled on other grounds, State v. Henderson, 789 P.2d 603 (N.M. 1990).  Petsche contends that, with adequate assistance of counsel, he could have satisfied this standard on any of six different grounds: "(1) he was forced to plead for fear of his life; (2) he was innocent; . . .

-13-

(3) counsel told him he could be subjected to the death penalty if convicted[;] . . . (4) the judge never accepted the plea; (5) the judge participated in the plea; and (6) counsel unreasonably represented Mr. Petsche." Aplt's Br. at 57. We conclude that none of these grounds merits habeas relief.

First, Petsche asserts that he feared for his life because of threats and violence he encountered in the county detention center. As he explained in his motion to withdraw, he believed that he would be safer in state prison, so he pled no contest in order to hasten his transfer into state custody. This claim fails, however, because there is no evidence that the violence was orchestrated by state agents. There is precedent for the proposition that coercion by non-state actors will render a plea involuntary, see, e.g., Bostic v. Carlson, 884 F.2d 1267, 1272 (9th Cir. 1989), but it appears that New Mexico has not embraced this position, see In re Kira M., 883 P.2d 149, 156 (N.M. 1994). Since the law on this issue was uncertain at best, the state court could reasonably determine that Petsche was unlikely to prevail on his motion by proving that he pled no contest out of fear of attacks by his fellow detainees.

Second, although Petsche has continually asserted his innocence, Rhinehart reasonably concluded that the State would be able to prove his guilt beyond a reasonable doubt (as discussed above in Part II.A(1)). It follows that the state

-14-

court could reasonably conclude that Petsche would not be able to establish his innocence to the degree necessary to withdraw his plea.

Third, the evidence regarding Rhinehart's sentencing advice to Petsche is inconsistent, and it therefore will not support his claim. In both his motion to withdraw and his testimony at the state habeas hearing, Petsche alleged that Rhinehart warned him that he could receive the death penalty for his offenses. Rhinehart testified, however, that she told Petsche that he "had a substantial exposure under the indictment," involving "well over 100 years of time." R. Vol. 2, Tr. of Oct. 30, 1999, at 47. We need not resolve this conflict; the mere fact that it exists (and has never been resolved in Petsche's favor) undermines Petsche's claim that the court would have permitted him to withdraw his petition on this basis. The state court could reasonably conclude that Petsche had not proven that Rhinehart gave him inaccurate advice and that he therefore was not prejudiced by Rhinehart's failure to present this claim in support of the motion to withdraw.

Fourth, Petsche's claim that the trial court never accepted his plea rests on a faulty premise. Although the trial court never expressly declared that the plea was entered, the court made the necessary findings – that the plea was voluntary and that it was supported by a factual basis – and called for a presentence report. Furthermore, there was nothing tentative or conditional in these statements; for

instance, the court *did not* say that it wanted to review the presentence report before formally accepting Petsche's plea, cf. United States v. Shaker, 279 F.3d 494, 497 (7th Cir. 2002) (discussing deferred acceptance of guilty pleas). As there is no indication that the court's acceptance was less than final, there is no reasonable probability that the court would have permitted withdrawal on the basis that the plea had never been accepted.

Fifth, the record does not support Petsche's assertion that the court was involved in the plea negotiation process. There is evidence that, before the plea hearing, the court told Rhinehart and the prosecutor that Petsche would receive consideration at sentencing for the fact Petsche would be placed in protective custody. This evidence does not establish, however, that the court put its thumb on the scales; instead, it appears that the judge expressed his views *after* the parties had reached an agreement. Given the absence of evidence in support of Petsche's assertion, the state court could reasonably discount this basis for withdrawal of the plea.

Finally, we reject Petsche's claim that he was entitled to withdraw his plea based on counsel's allegedly inadequate investigation for the same reasons we have rejected his ineffective assistance claim arising from the same allegations. Accordingly, we conclude that the state court did not resolve this claim

unreasonably and that Petsche therefore is not entitled to habeas relief on this ground.

III.

For the foregoing reasons, we affirm the decision of the district court denying Petsche's petition for a writ of habeas corpus.


Entered for the Court


Michael R. Murphy
Circuit Judge