1997-NMCA-094

945 P.2d 457

**In the Matter of the Adoption Petition of Caril Kenneth DRUMMOND and Shirley A. Drummond.**

**Carol Ann DRUMMOND, formerly known as Carol Ann McCrary, Petitioner–Appellee,**

v.

**Caril Kenneth DRUMMOND and Shirley A. Drummond, Respondents–Appellants.**

No. 17701.

Court of Appeals of New Mexico.

Aug. 25, 1997.

Jerry P. Cantwell, Atkinson & Kelsey, P.A., Albuquerque, Patricia A. Prekup, Los Angeles, CA, for Petitioner–Appellee.

Miguel P. Campos, Martinez & Campos Law Firm, Albuquerque, for Respondents–Appellants.

## OPINION

FLORES, Judge.

1. This is an unusual adoption case raising the issue of when, if ever, an adoption decree may be reopened after the statutory one-year deadline for attacking such decrees has passed. Some jurisdictions, such as Illinois, have cited public policy considerations favoring the stability of adoptions and have rejected virtually every attempt to find an exception to the applicable statute of limitations. Other jurisdictions have allowed for the possibility that under limited circumstances, the limitations period should not be applied to bar a birth parent's attempt to reopen an adoption decree. We hold that this case is one in which the statute of limitations period should not be strictly applied. We affirm and remand.

## I. FACTS AND PROCEDURAL HISTORY

2. The birth mother (Mother) and her daughter (the Child) lived with Mother's parents (Grandparents) for a number of years following Mother's divorce from the birth father. While Mother worked, Grandparents provided child care, but Mother's position as the Child's mother was not in doubt. According to Mother's testimony, at some point Grandfather discovered that if Grandparents adopted the Child they could receive additional Social Security monies. Grandfather began to put pressure on Mother to allow

such an adoption. At about the same time, Mother became very concerned about her health because a cancerous cyst had been discovered on her uterus. Mother believed her ex-husband had substance-abuse problems and would not be as good a caretaker for the Child as would her parents. Thus, she did not want the birth father to obtain custody of the Child if she should die. In part because of her father's pressure and in part because of her fear that she might die soon, Mother agreed to the adoption, but only after being assured that nothing would change, that she would still be the Child's mother, and that health permitting she would still raise the Child.

3. Mother signed a consent to adoption form which was deficient in several respects. First, the form recited that Mother had received independent counseling concerning the adoption, even though Mother had received no counseling. Second, the form was not signed in front of a judge, as in this case it should have been. *See* NMSA 1978, § 40–7–38 (Repl.Pamp.1989) (repealed 1993; for present comparable provisions, *see* NMSA 1978, § 32A–5–21 (Repl.Pamp.1995)). Despite the deficiencies, the adoption decree was entered on March 18, 1992.

4. Following the adoption, nothing changed—Mother and the Child still lived with Grandparents; Mother for all practical purposes remained the Child's mother; Grandparents still cared for the Child while Mother was at work; and Mother continued to provide health insurance, clothing, and groceries for the Child. Also, Grandparents began to receive approximately $400 per month in additional Social Security payments on behalf of the Child. This situation remained the same until Mother started dating a man of whom her parents did not approve. When Mother went on a week-long vacation with her boyfriend (now her husband), in May 1994, her parents told her to leave the family home without the Child. Within three months, Mother commenced this legal action to have the adoption declared void or otherwise reopened. Grandparents responded, maintaining that Mother's action was barred because it had been filed more than a year after the adoption decree was entered. *See*

NMSA 1978, § 40–7–51(F) (Repl.Pamp.1989) (repealed 1993; for present comparable provision, *see* NMSA 1978, § 32A–5–36(K) (Repl.Pamp.1995)) ("A final decree of adoption may not be attacked upon the expiration of one year from the entry of the decree[.]").

5. After a trial on the merits, the district court determined that Grandparents had committed fraud upon the court by submitting a consent form with the deficiencies mentioned above, and that the adoption decree was therefore void. The court also ruled that Grandparents had made misrepresentations to Mother by assuring her that nothing would change after the adoption, and that the adoption decree should be reopened on this basis as well as on the fraud-on-the-court ground.

## II. *DISCUSSION*

6. On appeal, Grandparents challenge the court's determination that there was fraud on the court, characterizing the deficiencies in the consent as "sloppy paperwork." Grandparents also argue that there was no evidence of fraud at the time of the initial statements to Mother, and that the only evidence is that Grandparents had no intention to have a change of heart about enforcing the adoption decree until the 1994 dispute between Mother and Grandparents that led to the current litigation. Finally, Grandparents contend that the district court was obligated to make a determination regarding the Child's best interests, even if the court was correct in vacating the adoption decree. As we discuss below, we agree that there was no fraud on the court in this case. We also agree that the evidence of fraud against Mother was not clear and convincing. However, we believe the district court's decision to reopen the adoption decree should be upheld on a different legal theory, given the facts of this case. Finally, we determine that the case should be remanded for a hearing concerning the Child's best interests with respect to the custody determination.

7. There are two statutes of limitation in the version of the Adoption Act applicable to this case that concern consents and adoption decrees. Under Section 40–7–51(F), a final decree of adoption "may not be

attacked" upon the expiration of one year from the entry of the decree. Also, Section 40–7–38(F) provides that a consent to an adoption may not be withdrawn prior to the entry of an adoption decree unless the consent was obtained by fraud. These two provisions, taken together, indicate that the only ground for revoking a consent prior to an adoption is fraud, and that any attack on an adoption decree must be made within one year after the decree is entered. *See In re Kira M.,* 118 N.M. 563, 570, 883 P.2d 149, 156 (1994) (holding that once a consent has been accepted by the children's court, the only ground upon which to attack the consent is fraud; implying that attacks on consents must be made before the adoption decree is filed). Here, Mother attacked the adoption over a year after the decree was entered. The question to be answered, then, is whether any exceptions to the one-year requirement might apply.

### A. Invalidity of the Consent/Fraud on the Court

■ 8. As we pointed out above, one ground relied on by the district court in making its ruling was that the problems with the consent in this case, which included the fact that Mother had not received the required pre-consent counseling, made the consent and resultant adoption void. Since it was void, the court held, it could be reopened at any time. This theory does not appear to be supported by cases decided under similar circumstances. *See, e.g., In re Joseph B.,* 258 Ill.App.3d 954, 197 Ill.Dec. 56, 63, 630 N.E.2d 1180, 1187 (1994) (where consent was limited to particular person as adoptive parent, and consent was void because that person did not adopt, the statute of limitations for revoking consent still applied; substantial compliance with adoption statutes is sufficient); *In re Adoption of Baby Girls Mandell,* 213 Ill. App.3d 670, 157 Ill.Dec. 290, 292–93, 572 N.E.2d 359, 361–62 (1991) (consent alleged void because given in exchange for money; court stated that consent could not be attacked after statute ran, so arguments based on the invalidity of the consent, such as the argument that the resulting adoption decree is void, must fail); *In re Adoption of J.H.G.,* 254 Kan. 780, 869 P.2d 640, 650–51 (1994)

(even though adoption petition was deficient in several ways, this did not render decree void; a judgment is void only if there is a lack of personal or subject matter jurisdiction, or a denial of due process); *Watkins v. Chirrick,* 19 Or.App. 241, 526 P.2d 1399, 1401 (1974) (even if facts show that consent was not voluntary, one-year statute of limitations was not met, and no good reason was given for failure to file within that time period; reopening adoption not allowed).

■ 9. In this case, we see no reason why the result should be different simply because the district court termed the deficiencies in the consent as fraud on the court. If there were true fraud on the court, under Rule 1–060(B) NMRA 1997, an independent action such as this could be maintained outside the time limitations of that Rule. We would then have to decide whether the statute of limitations of the Adoption Act would limit a claim based on fraud upon the court. The fraud-upon-the-court doctrine, however, is limited to extreme cases in which there is a concerted plan to defile the court itself. *Jemez Properties, Inc. v. Lucero,* 94 N.M. 181, 184 n. 1, 608 P.2d 157, 160 n. 1 (Ct.App.1979). The failure to ensure that counseling is obtained before a consent is signed does not rise to that level, especially where the birth mother herself read the document, testified she understood it, and signed it. Similarly, other procedural problems with the consent or adoption proceedings in this case do not constitute fraud on the court because Mother was fully aware of what she was doing, and clearly agreed to the adoption voluntarily at the time it was entered (albeit under the mistaken impression that it would never be enforced). If the deficiencies in this case were held to constitute fraud upon the court, many instances of failure to abide completely by statutory requirements would become examples of fraud on the court and subject to that doctrine. We do not believe the doctrine was intended to be as expansive as the district court held in this case. Therefore, we hold that fraud upon the court was not a proper ground upon which to reopen the adoption.

## B. Fraud Against Mother

10. The second ground relied upon by the district court was Grandparents' alleged fraud or misrepresentation in assuring Mother that nothing would change following the adoption. The court determined that this fraud warranted reopening the adoption decree. In doing so, the court necessarily decided that the statute of limitations in the Adoption Act did not begin to run until Mother discovered the fraud. It is not clear that this Rule, referred to as the discovery rule (codified in NMSA 1978, Section 37–1–7 (Repl.Pamp.1990)), applies in normal adoption cases. In Illinois, for example, the appellate courts have decided that the discovery rule does not apply in adoption cases because of the competing public-policy considerations supporting the stability and finality of adoptions and the adoptive relationship. *See Street v. Hubert*, 141 Ill.App.3d 871, 96 Ill.Dec. 215, 217–18, 491 N.E.2d 29, 31–32 (1986) (applying discovery rule in adoption cases would leave adoptions open to attack indefinitely, thus frustrating the purposes of the adoption statute). Similarly, the commentary to the Uniform Adoption Act, § 15(b), 9 U.L.A. 62 (1988), takes the position that even where fraud is involved, the adoption should be left intact once the one-year statute of limitations provided by that Act has passed. As we discuss below, however, we do not believe there was clear and convincing evidence of fraud that induced Mother to sign her consent to the adoption. We therefore need not decide whether the discovery rule should apply in adoption cases.

11. The elements of civil fraud include a representation that was not true as well as the intention to deceive the other party. *See* UJI 13–1633 NMRA 1997. There was little or no evidence in this case that tended to show that Grandparents, at the time they assured Mother nothing would change, had a secret intention to act otherwise. There was evidence that Mother signed the consent because Grandparents were pressuring her so that they could receive Social Security benefits on behalf of the Child. She also signed the consent because she was worried about her health and wanted to make sure the Child did not end up with the birth father. There was no evidence, and certainly no clear and convincing evidence, that Grandparents actually intended at the time of the adoption to use the decree to take the Child away from Mother. The fact that nothing changed in the relationships between the Child, Mother, and Grandparents for two years following the adoption undermines the argument that there was a secret scheme or plan. Instead, this appears to be a case in which Grandparents became angry at Mother, disapproved of the example she was setting for the Child, and decided to use the adoption decree to protect the Child from Mother's bad influence, or to pressure Mother into acting "appropriately." This after-the-fact change of intention does not qualify as fraud in the inducement, due to the lack of evidence that, at the time Grandparents made their statements, the statements were actually false and were intended to deceive Mother into acting.

## C. Affirming the District Court Under Right–For–Wrong–Reason Doctrine

12. Despite the fact that the legal rationale used by the district court was erroneous, we may affirm the court's decision if it is right for any reason and affirming on a different ground would not be unfair to the appellant. *See State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). We believe that the particular facts of this case would allow the adoption decree to be reopened under two different legal theories. In order to find that Grandparents made a misrepresentation to Mother, and that Mother was therefore entitled to reopen the adoption, the district court necessarily accepted Mother's testimony that she had been promised that nothing would change. In addition, there was no dispute in the evidence that the first time anything changed in the family's situation was when Mother began dating her now-husband and went with him for a week-long vacation. Grandparents had a full and fair opportunity to contest these facts, when they were trying to establish that the limitations period barred Mother's action. Therefore, it is not unfair to accept these facts as true in deciding whether to apply the right-for-the-wrong-reason rule.

## 1. Equitable Estoppel

■ 13. The first legal principle that applies under the facts set out above is one of equitable estoppel. Under this theory, a party may be estopped from asserting a statute-of-limitations defense if that party's conduct has caused the plaintiff to refrain from filing an action until after the limitations period has expired. *See Molinar v. City of Carlsbad,* 105 N.M. 628, 631, 735 P.2d 1134, 1137 (1987) (conduct of a party may estop it from raising statute of limitations as a defense). This principle has been discussed in adoption cases in other states. *See In re Joseph B.,* 197 Ill.Dec. at 70–71, 630 N.E.2d at 1194–95; *In re Adoption of Lori Gay W.,* 589 P.2d 217, 221 (Okla.1978). In *In re Joseph B.,* after stating that a party could be estopped from raising the statute of limitations as a defense if that party somehow induced the plaintiff to forego a claim until after the limitations period had run, the court held that the doctrine did not apply because the natural mother had shut her eyes to "obvious facts" and neglected to seek readily available information. The *In re Adoption of Lori Gay W.* opinion also set out the equitable estoppel doctrine, but held that the birth mother had become aware of the fraud more than a year before she filed suit, so the statute of limitations could still be used as a defense. 589 P.2d at 221.

■ 14. In this case, Grandparents' conduct in assuring Mother that nothing would change, and then taking no action to change the situation until after the limitations period had expired, induced Mother to refrain from trying to reopen the adoption decree in a timely manner. While it is true that Grandparents may not have intended this result since there was no evidence that they planned all along to deprive Mother of actual custody and control over the Child, the effect of their assurances and lack of action was the same as if they had intended to induce Mother's inaction. Therefore, it is appropriate to estop Grandparents from asserting the statute of limitations as a defense. We caution, however, that this is not a theory to be used often in a normal adoption case. This case is unusual because, while there was a legal adoption, there was never a change of living circumstances until after the statute of limitations had run. Thus, our holding is limited to quite unusual situations such as the one presented by this case.

## 2. Exceptional Circumstances

■ 15. In the alternative, another theory under which the court's decision may be upheld is a reopening of the adoption under Rule 1–060(B)(6). This is the "exceptional circumstances" provision of Rule 60(B), which allows a judgment to be reopened within a reasonable time if such circumstances are present. Many courts, including this Court and our Supreme Court, have held or assumed that attacks on adoption decrees are appropriately made pursuant to Rule 60(B). *In re Kira M.,* 118 N.M. at 570, 883 P.2d at 156 (citing Rule 60(B)(6) as means of protecting birth parent's interests in exceptional cases); *In re Webber,* 116 N.M. 47, 48, 859 P.2d 1074, 1075 (Ct.App.1993) (father's motion to reopen adoption filed under Rule 1–060(B)(4)); *see also, e.g., In re Adoption of P.H.A.,* 899 P.2d 345, 346 (Colo.Ct.App.1995) (applying Rule 60(b) to motion to reopen based on fraud); *In re Baby Boy Doe,* 894 P.2d 1285, 1288 (Utah.Ct.App.1995) (where it was too late to attack consent to adoption, Rule 60(b) could be used to attempt to reopen decree; however, time requirements of Rule 60(b)(3) were not complied with, so attempt to reopen failed).

16. In fact, in *In re Kira M.,* our Supreme Court specifically endorsed the use of Rule 60(B)(6), in exceptional circumstances, to override a literal interpretation of the Adoption Act. The *In re Kira M.,* Court held that a natural parent's rights could be protected by a court, in appropriate cases, despite the fact that under the Act fraud is the only ground for revoking a consent to adoption once the consent has been accepted by the district court. 118 N.M. at 570, 883 P.2d at 156. We see no reason, however, that this rule could not also override the one-year statute of limitations contained in the Act. Where the best interests of the child demand it, exceptional circumstances should be used to prevent application of that limitations period.

17. Under the facts most favorable to Mother, which were accepted by the district

court, this is a clear case requiring, at a minimum, that the adoption decree be reopened to allow a best-interests-of-the-child analysis. This adoption was never meant to be a real adoption or to change Mother's actual relationship with the Child. It did not, in fact, change that relationship until the statute of limitations had run on her ability to attack the adoption decree. It is difficult to think of more exceptional circumstances than these. This case does not involve the usual public-policy considerations favoring permanence and stability of adoptions, *see In re Kira M.*, 118 N.M. at 567–69, 883 P.2d at 153–55, because this was not a case in which the child was sent to a new adoptive residence, new relationships were formed with the adoptive parents, and the relationship with the birth parent was severed. We note that Mother herself bears heavy responsibility for the events subsequent to the adoption. Parental rights are not to be taken lightly and disposed of in a legal document when there is no intention of actually relinquishing those rights. In cases such as this, however, the best interests of the Child are paramount. *See id.* at 570, 883 P.2d at 156. If, as the district court necessarily determined, Mother actually was and remained the Child's "real" mother as a factual matter, at least until she was ejected from her parents' home, it is not in the Child's best interests to be taken away from Mother simply because Mother did a foolish thing by trusting her parents with the power to end her parental rights. We therefore hold that this case is one in which exceptional circumstances exist, and that pursuant to Rule 60(B)(6) the district court properly reopened the adoption decree.

**D. Remain or Outright Affirmance**

██ 18. As we noted above, one of Grandparents' arguments is that the district court should not have immediately transferred custody to Mother, even if reopening the adoption decree was appropriate, without performing an analysis of the best interests of the Child. Mother concedes in her answer brief that such an analysis is necessary in cases such as this one. This concession is in accord with New Mexico law. *See, e.g., Normand v. Ray*, 107 N.M. 346, 348–49, 758 P.2d

296, 298–99 (1988) (even though grandparents' adoption was invalidated for lack of due process caused by failure to properly serve birth father and grandparents' actions in hiding the children from father, Supreme Court remanded to district court for hearing concerning fitness of father and grandparents, rather than simply affirming the award of the children to father).

19. Mother contends, however, that here the court did consider the Child's best interests in returning the Child to Mother. We do not agree that it is clear that the Child's best interests were a consideration in the court's decision. In a pretrial hearing concerning discovery, the court indicated that the only issues it was going to consider at trial were the fraud issues—whether the consent was induced by fraud. The court rejected Mother's suggestion that a court-appointed expert, *see* Rule 11–706 NMRA 1997, might be needed. At trial, there was initially some indication that the court might be changing its mind. Over Grandparents' objection that the testimony had nothing to do with fraud, Mother elicited testimony concerning Grandfather's depression, suicide attempts, and recent hospitalization. Mother's response to the objection was to argue that this case might result in a custody determination, and that the evidence was relevant for that purpose. The court allowed the testimony to continue, without comment. Later, however, during cross-examination of Grandfather, Mother's counsel attempted to ask questions about the suicide attempts, and opposing counsel objected again. Mother's counsel again responded by arguing that the case might still involve the question of custody and Grandfather's fitness as a parent, and that the suicide attempts were a proper line of inquiry. The court, in its only explicit comment on the issue, stated that "[t]hose matters can be dealt with at a later juncture," and cut off the line of questioning. Nothing more was said about a fitness inquiry or a best-interests analysis.

20. While it is possible that the court did implicitly make a best-interests-of-the-child determination in reaching its decision, there are enough indicators to the contrary to give us pause. As we stressed above, in cases

such as this the best interests of the child are the most important considerations, and where it is not clear that these interests formed a basis for the court's decision, we believe remand is appropriate to allow a hearing to be held on that question. *See In re Kira M.*, 118 N.M. at 570–71, 883 P.2d at 156–57; *Normand*, 107 N.M. at 348–49, 758 P.2d at 298–99.

## III. *CONCLUSION*

21. Based on the foregoing, we affirm the district court's determination that the adoption decree should be reopened. We remand, however, for a hearing concerning the best interests of the Child with regard to her custody and control.

22. **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.