2008-NMCA-038

178 P.3d 839

**In The Matter of the ADOPTION PETITION OF REBECCA M., Petitioner–Appellee,**

v.

**Angel A., Respondent–Appellant.**

**No. 26,675.**

Court of Appeals of New Mexico.

Jan. 16, 2008.

Cuddy, Kennedy, Albetta & Ives, LLP, Eleanor K. Bratton, Albuquerque, NM, for Appellee.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Jocelyn Drennan, Albuquerque, NM, University of New Mexico Clinical Law Program, Michael Norwood, Supervising Attorney, Theresa Player, Supervising Attorney, Carol Suzuki, Supervising Attorney, Cristina Adams, Practicing Law Student, Michael Cardwell, Practicing Law Student, Iris Augusten, Practicing Law Student, Albuquerque, NM, for Appellant.

**OPINION**

CASTILLO, Judge.

{1} Respondent–Appellant (Angel) appeals the district court's denial of her motion to reopen or set aside an adoption. She raises issues regarding recusal, failure to file a petition, equitable estoppel, and exceptional circumstances. Because Angel knowingly waived the opportunity to disqualify the judge in this case, we hold that the district court judge was not required to recuse himself upon the motion made by Petitioner–Appellee (Rebecca) after the waiver. We conclude that the statute governing a petition for adoption is not jurisdictional. We also conclude that even though an actual petition was not filed, the district court had all of the information required to be in the petition and that entry of a decree of adoption was thus proper. Finally, as to Rebecca's arguments that the doctrines of estoppel and exceptional circumstances apply, our review of the evidence supports the district court's refusal to apply these doctrines in order to enlarge the one-year statute of limitations for reopening adoption decrees. Accordingly, we affirm.

**I. BACKGROUND**

{2} Angel and Rebecca were domestic partners. In April 1998, Angel gave birth to Child, and the three lived together for two years. In April 2000, Angel and Rebecca separated, and Angel and Child moved out of Rebecca's home. Despite the breakup, Angel and Rebecca began proceedings for Rebecca to adopt Child. Angel and Rebecca agreed that Angel would retain primary physical custody of Child.

{3} Angel was counseled by a social worker and an attorney before she signed a consent to adopt (consent) on December 21, 2000. The consent also bears the signature of the presiding district court judge in this case. Angel disputes whether the judge was present when Angel signed the consent. The consent included a clause waiving Angel's right to further notice of any adoption proceedings. Rebecca filed a request for placement order on December 18, 2000, but failed to file a petition for adoption, as required by NMSA 1978, {32A–5–26 (2003). On July 25, 2001, the district court held a hearing for entry of an adoption decree, and the decree was entered on August 3, 2001. Angel received a copy of the final decree of adoption.

{4} Angel and Child lived in Indiana until September 2002. During this time, Rebecca visited Child and communicated with Angel by phone about Child's upbringing. When Angel returned to New Mexico in September 2002, she left Child with Rebecca for four months. When Angel returned for Child in January 2003, Child was reluctant to leave Rebecca. Angel responded by limiting Rebecca's contact with Child. This response concerned Rebecca, and she filed a motion for time-sharing in the Second Judicial District in February 2003. That court entered an order requiring Angel and Rebecca to share custody of Child fifty-fifty.

{5} In response to Rebecca's motion for time-sharing, Angel filed a motion in the Thirteenth Judicial District to set aside or reopen the decree of adoption, pursuant to Rule 1–060(B) NMRA. Judge McDonald presided over this motion, and he was the same

judge who had presided over the adoption. During the proceedings regarding this motion, Angel first declined to seek recusal of Judge McDonald, but she later filed a motion for recusal or disqualification. The motion was denied after a hearing. The district court also denied Angel's motion to set aside or reopen the adoption. Angel appeals the denial of the motion to set aside or reopen the adoption. Additional facts will be developed as they become relevant to our discussion.

## II. DISCUSSION

### A. Recusal

{6} We review recusal issues for abuse of discretion. *Dawley v. La Puerta Architectural Antiques, Inc.*, 2003–NMCA–029, ¶ 39, 133 N.M. 389, 62 P.3d 1271. According to the Code of Judicial Conduct, a judge must recuse himself "in a proceeding in which the judge's impartiality might reasonably be questioned." Rule 21–400(A) NMRA. Rule 21–400(A) lists, not exclusively, several examples that require recusal, including "where ... the judge ... is to the judge's knowledge likely to be a material witness in the proceeding." Rule 21–400(A)(5)(d). The Code of Judicial Conduct also makes provision for the parties, upon disclosure of potential impartiality, to waive disqualification. Rule 21–400(C). If the parties agree and the judge is willing to continue, "the judge may participate in the proceeding." *Id.* Parties may not waive the opportunity to move for recusal in the event of "personal bias or prejudice concerning a party." *Id.* In this case, neither party has alleged that the judge harbored personal bias or prejudice.

{7} The judge began the February 27, 2004, hearing on Rebecca's motion to set aside the adoption by disclosing his prior involvement in the case and identifying the potential difficulties:

There is a question about the consent; at least, there's an allegation in the pleadings that the consent was not taken in my presence. I can tell you what my standard practice is. I don't have an independent recollection of this consent. But my standard practice has been in the past—and

probably will not be in the future—is to have the parties come into my chambers and take the consent and sign off and date the consent after I've had an opportunity to consult with the parent who is granting the consent. Now, if some of the issues of this case require me to decide what I did in that case, it may necessitate my recusal in this matter. Now, is it the request of [Angel] and all of her counsel that I recuse myself?

Counsel for Angel responded as follows:

Your Honor, before filing this motion, we did discuss that question among us.... We decided not to make that request. But if the court feels that it would be inappropriate for the court to make the decision, then it would certainly be in the court's discretion to choose to recuse yourself; but we are not making that request.

The district court judge then clarified Angel's consent by asking, "So you're willing to accept my decision on the issue of the consent?" Counsel for Angel agreed to accept the decision "[o]n all of the issues of the case." The district judge followed the provisions of Rule 21–400(C); he disclosed the basis for disqualification. The matter had been discussed by Angel with her counsel—not in the presence of the judge. On the record, Angel waived disqualification by agreeing to abide by the judge's decisions in "all of the issues of the case." Rebecca made no objection, and the hearing continued.

{8} The judge then heard several hours of testimony and argument from both Angel and Rebecca concerning the circumstances of the consent. He then stopped the proceeding and voiced his concerns. He explained that he was upset about his failure to put the consent proceedings on the record because that failure put at issue the fairness of the whole proceeding. The judge stated that the parties needed to have confidence that the proceeding was fair to all and that the court was impartial. He then opined that the only way to ensure fairness would be to have another judge review what happened in this case. The judge expressed his concern that he might be called as a witness. Rebecca's attorney pointed out that the judge had al-

ready asked Angel about the fairness of his remaining on the case and that Rebecca was not asserting that the consent was improperly taken. The judge then repeated his concerns and told the parties that he would enter an order changing venue in this case.

{9} The judge changed his mind, however, and did not enter the order. *See Montaño v. Encinias,* 103 N.M. 515, 709 P.2d 1024 (1985) (noting that this Court has repeatedly held that the oral comments of a judge are not binding and that only a written judgment reflects the court's decision). On March 18, 2004, the parties learned that venue would not be changed and that the original district judge would remain on the case. Angel then filed a motion for recusal. At the hearing on the motion, Angel argued that the district judge's comments at the close of the February 27 hearing made his recusal necessary. The judge asked Angel to characterize the potential impropriety. Angel argued that the judge's reliance on his standard practice was improper and that the first notice of this impropriety came during the judge's comments at the close of the February 27 hearing.

{10} We do not agree with Angel that the judge's closing comments on February 27 changed the character of his earlier disclosure. Before the hearing began, the judge explained his standard practice for taking consents. Angel, with full knowledge of the judge's normal practice, intentionally abandoned the right to request recusal. *See State v. Bishop,* 108 N.M. 105, 108, 766 P.2d 1339, 1342 (Ct.App.1988) ("Waiver is an intentional abandonment of a known right."). The comments regarding the consent that were made at the close of the hearing were not materially different from those made before the hearing began. Thus, Angel did not establish the factual basis necessary to compel recusal. *See State ex rel. Bardacke v. Welsh,* 102 N.M. 592, 606, 698 P.2d 462, 476 (Ct.App. 1985) ("[T]here must be a reasonable factual basis for doubting the judge's impartiality."). The judge's later concern for the best interests of Child and for the peace of mind of the parties, after a full day's testimony, did not change the fact that before the hearing began, the judge disclosed the basis for disqual-

ification and Angel waived the right to recuse the judge on that basis.

{11} Questions about the propriety of the district judge's relying on his common practice regarding consents are not before us. We consider only whether the district court was within its discretion to deny Angel's motion requesting recusal. We hold that Angel established no additional factual basis, unknown to her at the time of waiver, to require the district judge to recuse himself upon her motion.

## B. Failure to File a Petition for Adoption

■■■ {12} We are also required to determine whether failure to file a petition for adoption, as required by the Adoption Act, NMSA 1978, §§ 32A–5–1 to –45 (1993, as amended through 2007), is a jurisdictional defect and whether an adoption decree without such a petition is void. These issues require us to determine whether Rebecca complied sufficiently with the Adoption Act. "The interpretation of statutes is a question of law[, which] we review de novo." *Vigil v. Fogerson,* 2006–NMCA–010, ¶ 26, 138 N.M. 822, 126 P.3d 1186. We then determine whether substantial evidence supports the district court's findings that Rebecca complied with the statute. *See id.*

{13} Rebecca filed a request for placement on December 18, 2000, but failed to file a petition for adoption, until after the decree of adoption was entered. The district court issued an order on January 18, 2002, which deemed the petition for adoption filed nunc pro tunc on December 18, 2000. The petition itself does not appear in the record. Angel argues that the petition for adoption is the device that invokes the jurisdiction of the district court over an adoption. Without the petition for adoption, Angel contends, the district court did not have jurisdiction to enter the decree of adoption, and the adoption is therefore void. We disagree.

{14} We begin with a summary of the adoption proceedings in this case and the applicable statutes. This adoption was an independent adoption because Rebecca was not a relative, a stepparent, or a caregiver designated by will and because Child was not

in the custody of the state or an agency. *See* {32A–5–12(C). An independent adoption is subject to certain procedural requirements, outlined in the Adoption Act. *See id.* The petitioner in an independent adoption must file a request for placement with the court. *See* {32A–5–12(A), –13(A). The request for placement triggers a pre-placement study. *See* {32A–5–13. A pre-placement study consists of, among other things, a series of interviews with the petitioner and the birth parents, as well as a home visit at the petitioner's residence. Section 32A–5–14. The request requires the petitioner to provide the following information:

(1) the full name, age and place and duration of residence of the petitioner and, if married, the place and date of marriage;

(2) the date and place of birth of the adoptee, if known, or the anticipated date and place of birth of the adoptee;

(3) a detailed statement of the circumstances and persons involved in the proposed placement;

(4) if the adoptee has been born, the address where the adoptee is residing at the time of the request for placement;

(5) if the adoptee has been born, the places where the adoptee has lived within the past three years and the names and addresses of the persons with whom the adoptee has lived. If the adoptee is in the custody of an agency or the department, the address shall be the address of the agency or the county office of the department from which the child was placed;

(6) the existence of any court orders that are known to the petitioner and that regulate custody, visitation or access to the adoptee, copies of which shall be attached to the request for placement as exhibits; if copies of any such court orders are unavailable at the time of filing the request for placement, the copies shall be filed prior to the issuance of the order of placement;

(7) that the petitioner desires to establish a parent and child relationship between the petitioner and the adoptee and that the petitioner is a fit and proper person able to care and provide for the adoptee's welfare;

(8) the relationship, if any, of the petitioner to the adoptee;

(9) whether the adoptee is subject to the federal Indian Child Welfare Act of 1978, and, if so, the petition shall allege the actions taken to comply with the federal Indian Child Welfare Act of 1978 and all other allegations required pursuant to that act;

(10) whether the adoption is subject to the Interstate Compact on the Placement of Children and what specific actions have been taken to comply with the Interstate Compact on the Placement of Children; and

(11) the name, address and telephone number of the agency or investigator who has agreed to do the pre-placement study.

Section 32A–5–13(F).

{15} Next, the Adoption Act requires that a petition be filed within sixty days of an adoptee's placement into a home. Section 32A–5–25. The verified petition for adoption must allege, in relevant part: (1) the petitioner's name, age, and place and duration of residence, as well as marital status and details; (2) the date and place of birth of the adoptee; (3) the residences of the adoptee within the past three years and the names and addresses of persons with whom the adoptee has lived; (4) the birth name and other names of the adoptee; (5) the adoptee's residence at the time the petition was filed and when the adoptee will live with the petitioner; (6) that the petitioner is fit and willing to establish a parent and child relationship; (7) the existence of court orders relating to the adoptee; (8) the relationship between the petitioner and the adoptee; (9) the names and addresses regarding consents, as well as copies of the consents; (10) whether the adoption will be open; (11) whether the adoptee is an Indian child; (12) whether the adoption is subject to the Interstate Compact on the Placement of Children, NMSA 1978, {32A–11–1 (1993); (13) whether the adoptee is foreign born; (14) whether the adoption is a convention adoption; and (15) the contact information for the person responsible for providing any post-placement services. *See* {32A–5–26.

{16} The district court has subject matter jurisdiction over adoption cases by the New Mexico Constitution and by statute. *See* N.M. Const. art. VI, {13 ("The district court shall have ... such jurisdiction of special cases and proceedings as may be conferred by law[.]"); NMSA 1978, § 32A–1–5(A) (1993) (establishing the children's court as a division of the district court); NMSA 1978, {32A–1–8(A)(5) (2005) ("The court has exclusive original jurisdiction of all proceedings under the Children's Code in which a person ... is a child alleged to be ... a child subject to adoption[.]" (citation omitted)).

{17} There is no question that the district court had the statutory and constitutional jurisdiction to consider whether to enter a decree for adoption. Angel confuses the subject matter jurisdiction of the district court to enter a decree of adoption, which is created by the state constitution and by statute, with a document that invokes the jurisdiction of the court. Normally, a document titled Petition spurs the district court to exercise its jurisdiction. In this case, a document titled Request for Placement spurred the district court to action. The title of the document did not strip the district court of the ability to exercise the jurisdiction over subject matter that was granted by the New Mexico Constitution and by statute.

{18} The question before us is whether the adoption decree is valid, despite the fact that a petition for adoption was not actually filed. We have recently held that "[i]nsistence on strict adherence to every aspect of the [Adoption] Act's requirements makes little sense if a failure to strictly comply does not result in prejudice to a birth parent's right to understand the consequences of relinquishment and consent." *Vigil*, 2006–NMCA–010, ¶ 41, 138 N.M. 822, 126 P.3d 1186. In the present case, a review of the record shows that the district court had an opportunity to examine all of the information and evidence that would have been supplied by the petition, had it been filed. We see no prejudice to Angel resulting from Rebecca's failure to file a petition for adoption.

{19} *Vigil* directs us to examine whether Angel was prejudiced by Rebecca's failure to comply fully with the statute. *Id.* ¶¶ 40–41.

Angel contends that without the petition, the district court was not required to consider questions regarding the validity of the consent. We agree with Angel that without a petition, it is possible the district court might not receive copies of the consents. *Compare* {32A–5–13(F) (not requiring copies of consents to be included with a request for placement) *with* § 32A–5–26(J) (requiring copies of consents to be attached to an adoption petition). But in the case before us, the district court did receive a copy of the consent, as well as the counseling narratives and a post-placement report. Any irregularities regarding the consent were before the district court. Indeed, even if Rebecca had filed the petition for adoption, Angel would not have received it or a notice of the hearing on the adoption decree because Angel waived her right to "further notice of the adoption proceedings" when she signed the consent on December 21, 2000. Section 32A–5–21(A)(12).

{20} The proper procedure for contesting the validity of a consent does not rely on the other party's filing a petition for adoption. A biological parent may, before the entry of the decree, file a written petition that "alleges the invalidity of the mother's or father's own consent or relinquishment for adoption previously filed in the adoption proceeding." Section 32A–5–36(D). Filing such a motion allows the court to hear evidence and make a determination on the validity of the consent. *Id.* Angel, to further protect her rights, could also have made her consent conditional on retaining primary physical custody. *See* {32A–5–21(D). Such conditions can be proposed for 180 days after the consent is executed. *Id.* A petition for adoption would not have cured the alleged defects in the consent that Angel signed.

{21} Even though a petition was not filed, the district court had before it all of the information required by statute to be set forth in a petition. We hold that the decree for adoption is not void for lack of jurisdiction because the presence of a filed petition to adopt is not a jurisdictional prerequisite. Further, we conclude that the pleadings and evidence presented satisfied the requirements of the Adoption Act and that the dis-

trict court therefore entered the decree properly.

## C. Enlargement of Statute of Limitations

### 1. Estoppel

 {22} Next, we address Angel's contention that Rebecca should be estopped from relying on the one-year statute of limitations set out in the Adoption Act in order to prevent Angel from reopening the adoption decree. *See* {32A–5–36(K) ("A decree of adoption may not be attacked upon the expiration of one year from the entry of decree[.]"). Where a district court denies equitable relief, such as estoppel, we review the matter for abuse of discretion. *Vigil,* 2006–NMCA–010, ¶ 56, 138 N.M. 822, 126 P.3d 1186. "[A] party may be estopped from asserting a statute-of-limitations defense if that party's conduct has caused the plaintiff to refrain from filing an action until after the limitations period has expired." *In re Adoption Petition of Drummond,* 1997–NMCA–094, ¶ 13, 123 N.M. 727, 945 P.2d 457.

{23} Angel's primary argument is that her consent was not knowing or voluntary. Her position is that her consent was based on her understanding that she would have primary custody of Child and that this would change only in the event of her death or an incapacitating illness. The district court heard testimony that Angel received counseling and legal advice that adoption does not guarantee continuation of the status quo regarding physical custody. The district court had ample factual support to conclude that equitable estoppel did not apply to bar the statute of limitations.

{24} Angel further argues that Rebecca had a secret intent to challenge Angel's primary physical custody, despite assurances to the contrary, and that Angel's consent to the adoption was based on Rebecca's misleading representations. Rebecca countered that she sought a change in custody only after Angel refused to allow Rebecca contact with Child and not as a result of a secret intent. The district court believed Rebecca. *See State v. Neal,* 2007–NMSC–043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (recognizing that "the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility"). We hold that the district court's ruling—that equitable estoppel was inapplicable—was based on substantial evidence and was not an abuse of discretion.

### 2. Exceptional Circumstances

 {25} It is well settled that Rule 1–060(B)(6) may be used to reopen an adoption decree if the party attempting to reopen the decree can establish exceptional circumstances. *See In re Kira M.,* 118 N.M. 563, 570, 883 P.2d 149, 156 (1994). "Any such order must, of course, be consistent with the best interests of the child, which must be given paramount consideration." *Id.* We consider relief for exceptional circumstances to be an equitable remedy, which we review for an abuse of discretion. *Vigil,* 2006–NMCA–010, ¶ 56, 138 N.M. 822, 126 P.3d 1186. "Where the court's discretion is fact-based, we must look at the facts relied on by the trial court as a basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted).

{26} To support an argument for exceptional circumstances, Angel relies upon the analysis in *Drummond* and contends that her case is identical. We disagree for a number of reasons.

{27} In *Drummond,* the mother received no counseling about the effect of adoption on her parental rights. 1997–NMCA–094, ¶ 3, 123 N.M. 727, 945 P.2d 457. In the case before us, the district court found that Angel did receive the counseling required by statute.

{28} The most striking difference between our case and *Drummond,* however, is the sequence of facts leading to changes in living circumstances. In *Drummond,* the adoptive parents, the child's grandparents, were responsible for the changes in living circumstances that led to the mother's contesting the adoption. *Id.* ¶¶ 2, 4. The grandparents forced their daughter to leave the house without the child because the grandparents did not approve of their daughter's boyfriend. *Id.* ¶ 4. In the case before us, Angel caused the change in living arrangements.

Angel left Child with Rebecca and disappeared for several months; upon returning, Angel refused to let Child have contact with Rebecca. She did not seek a change in custody until Angel altered the agreement and changed the custody landscape.

{29} Notably in *Drummond*, this Court, after reviewing the district court's decision to allow the adoption decree to be reopened, accepted as true the facts that the district court had determined. *Id.* ¶¶ 1, 12. We make the opposite inquiry in the present case: whether the district court abused its discretion by refusing to reopen the adoption decree. *Drummond* is distinguishable, and we hold that the district court did not abuse its discretion when it refused to reopen the adoption decree for exceptional circumstances.

**D. Best Interests of Child**

{30} In adoption proceedings, a court must determine the best interests of the child. *See id.* ¶ 20 (remanding the case for a hearing to determine the best interests of the child where it was "not clear that these interests formed a basis for the court's decision"). Here, Angel insists that the district court made no independent best-interest findings with regard to the reopening of the adoption decree. This argument relies on a statement by the district court that the best-interest findings of the Second Judicial District, which resulted from the custody determinations, might effect collateral estoppel. Later, the court indicated that it would use those earlier findings as "a guide in determining best interests."

{31} It is apparent from the district court's findings and conclusions that the district court considered Child's best interests in the context of reopening the adoption decree. The court's findings of fact referred to the counseling narrative composed prior to adoption, the history between the parties, and the determination of the guardian ad litem. Based on these findings, the court concluded that "[i]t is in the Child's best interests for the Adoption Decree entered in this case to be upheld." Angel's argument has no merit.

**III. CONCLUSION**

{32} We affirm the district court.

{33} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.