This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39767**

**LYDIA ALFARO,**

      Petitioner-Appellee,

v.

**TRANSITO DIAZ,**

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Allen R. Smith, District Court Judge**

Lauren Law, LLC
Lauren L. Barela
Los Lunas, NM

for Appellee

Law Office of Augustine M. Rodriguez, LLC
Augustine M. Rodriguez
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}** Respondent Transito Diaz (Father) appeals the district court's divorce decree that incorporated a marital settlement agreement, a stipulated parenting plan and child support obligation between Father and Petitioner Lydia Alfaro (Mother), and a warranty deed and quitclaim deed conveying real estate from Father to Mother. Father argues that the district court erred because (1) the translations provided by the certified interpreter during the hearing, where the parties agreed to the division of property and custody were inaccurate; (2) Father's agreement to the division of property and custody

was not knowing and voluntary; (3) the agreements were unconscionable because they were unfair and unjust; and (4) the parties should have gone to trial and the district court should have ruled on Plaintiff's motion for summary judgment. We affirm.

**BACKGROUND**

**{2}**     Both Mother and Father are of "limited English proficiency" and required a Spanish speaking court interpreter during the district court proceedings. Mother and Father were married in 2009 and have three children together. Mother applied for a petition of dissolution of marriage from Father in September 2018. The district court ordered the parties to attend mediation, but Father did not attend. Father responded to Mother's petition, but the matters seem to have languished thereafter. In October 2018 in a separate proceeding, the district court entered a mutual order of protection ordering the parties to share physical custody of the children on a 50/50 basis, alternating weekly. The terms of the order expired in April 2019.

**{3}**     In February 2020, Mother filed a motion to amend custody and timesharing, requesting that "she have primary custody with [Father] having timesharing every other weekend." Father did not file a response. The parties appeared at a telephonic hearing on May 27, 2020. At the telephonic hearing, Mother was represented by counsel, Father appeared without representation. A court appointed interpreter was put under oath and made available for both Mother and Father. After the district court reviewed the history of the case, the district court noted that they were there on Mother's motion to amend the custody and timeshare agreement.

**{4}**     Mother's counsel represented that, after negotiation, the parties had agreed on all issues except sole custody. For the remainder of the hearing, the parties discussed and entered into agreements about the parentage of the parties' eldest child, custody of the children, the marital home, Father's 401k, Father's social security benefits, EBT benefits, Medicaid benefits, a trailer, the tools inside the trailer, and Father's personal property inside the home. The parties agreed that Mother would get sole legal and physical custody of the children, the home, the social security, EBT, and Medicaid benefits, while Father would get his 401k, the trailer and its contents, and his personal effects inside the home. The parties also established that Father was the parent of their eldest child. The district court asked Mother's counsel to prepare an order and a warranty deed and told Father to review the order to "make sure that it says what you have agreed to" before the hearing was adjourned.

**{5}**     No order was presented to the district court and in August 2020 Mother requested a hearing for an "[e]videntiary [t]rial on the [m]erits." Father's counsel entered his appearance in early September and filed a "Trial Brief" in late October arguing that the house was Father's sole and separate property and making claims against Mother for unjust enrichment. Father also filed a motion for summary judgment and declaratory judgment, a witness list, and an exhibit list. Mother also filed a witness list, exhibit list, a motion for child support, and a response to Father's motion for summary judgment, before Father filed his reply in support of his motion for summary judgment.

**{6}**     Another telephonic hearing was held on November 5, 2020, with both parties represented by counsel. A certified court interpreter interpreted for the parties. After reviewing the history of the case, the district court was adamant that the parties had entered into an agreement at the May 2020 hearing, and that the court was simply waiting for an order memorializing the agreement. The district court asserted a number of times during the November 2020 hearing that his approval of the parties' agreement constituted an order of the court. As such, the district court informed the parties that it was not appropriate to relitigate the agreed upon terms of the agreement. Rather, he asserted, the appropriate procedure was to enter an order reflecting the agreement, and then counsel could file motions to reconsider to revisit the substance of the agreement.

**{7}**     Father's counsel explained that after the May 2020 hearing, Father "had a problem" with the sole legal custody and distribution of property. The district court explained that once the order was tendered, if Father had a problem with the agreement or form of order, the appropriate response was to file a request for a presentment hearing or a motion to reconsider. Father made an oral motion to continue to provide the parties an opportunity to brief the district court on the court's position that there was an agreement, which the district court denied. The district court told the parties it needed an order memorializing the agreement made in May 2020 and after that the parties could file pleadings to reconsider, but until then the judgment stood. The district court also denied the motion for summary judgment.

**{8}**     In December 2020, Father filed a motion for a presentment hearing, in which he stated he "withdraws his acquiescence to the purported agreement of May 27, 2020." Mother filed a written response, and the district court held another hearing on March 31, 2021. At the hearing both parties were represented by counsel, and Mother was provided a certified interpreter under oath. Father argued that the district court did not enter an order on the agreement at the May 27, 2020 hearing. In response, the district court made clear that, in its view, the parties entered into an agreement and the court had entered an oral order approving the agreement at the May 2020 hearing. The district court reiterated that it was waiting on a written order memorializing that agreement, and that if Father disagreed with that order, he needed to file a motion after the written order was filed.

**{9}**     In April 2021, the district court filed an order that granted the parties' dissolution of marriage and adopted the martial settlement agreement, the stipulated parenting plan, and child support obligation (the Agreements), that Father had refused to sign. Father appeals.

**{10}**     Father filed a docketing statement with this Court that failed to provide any facts from which we could discern whether or not—as a factual matter—Father agreed to anything on the record as ultimately found by the district court. Since it could be dispositive if Father accepted the settlement offer on the record, we proposed to affirm based on the presumption of correctness. Our calendar notice instructed Father that "any memorandum in opposition to this proposed disposition [Father] chooses to file should include a thorough description of the proceedings below, particularly with regard

to the hearing conducted on May 27, 2020." Father filed a memorandum in opposition that was largely unresponsive to the request for a factual description of the proceedings. Rather than provide us with any additional information about what happened at the hearing, Father continued to argue that the property division and parenting plan were unfair. Father failed to provide a description or summary about what he said at the hearing and failed to inform this Court of the relevant facts to the central question of whether Father assented to the terms reflected in the Agreements.

**{11}**   This Court then entered an order to show cause that required Father to file an amended memorandum in opposition "that summarizes the facts of the May 27, 2020, hearing and provides an argument premised on those facts." Father's reply was not responsive to our request. Instead, Father again asserted that appellate review of this case would require us to review the transcript of that hearing in order to "evaluate the [district] court's assertion that [Father] acquiesced."[1]

## DISCUSSION

### I.      Father's Argument Regarding Inaccurate Translations Is Unpreserved

**{12}**   Father spends a significant amount of time in his brief arguing that the certified interpreter made incorrect translations during the May 2020 hearing.[2] He claims his arguments were preserved during the November 2020 hearing, but provides no citations to when in the hearing he objected to the translations. *See* Rule 12-318(A)(4) NMRA (requiring that briefs "with respect to each issue presented, shall contain . . . a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on").

**{13}**   "To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked." Rule 12-321(A) NMRA; *see Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)). Father presented no evidence to the district court that the translations were incorrect. The interpreter's translations and Father's objections to them are factual matters to be decided based on evidence explaining their meaning. This Court is not in a position to evaluate the accuracy of those translations without a ruling from the district court based on a record of argument and evidence concerning the translations. We conclude, therefore, that Father's arguments regarding inaccurate translations were not preserved

1We note that had Father's counsel provided a thorough review of the May 2020 hearing, as required by Rule 12-208(D)(3) NMRA, and not obfuscated the fact that Father assented to terms reflected in the final order, the result would have been the same for Father while saving this Court's judicial resources. We admonish counsel to be mindful that this Court relies upon the candor of appellate practitioners. *See* Rule 16-303(A)(1) NMRA ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal."); *In re Chavez*, 2013-NMSC-008, ¶¶ 23, 26, 299 P.3d 403 (suspending an attorney from the practice of law for, inter alia, a "demonstrated pattern of dishonesty").

2Father also devotes considerable briefing space providing his own translation of the parties' interactions at the May 2020 hearing. This, of course, is improper and we pay his effort no regard.

and we decline to address them. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("Absent . . . any obvious preservation, we will not consider the issue.").

## II.      Father's Agreement Was Knowing and Voluntary

**{14}**     Father next argues that his agreement to the terms of the Agreements was not knowing and voluntary, and thus they are not enforceable. Resolution of this issue primarily presents an issue of substantial evidence. Given Father's failure to cite to the record, we would normally not undertake a substantive review. *See Chavez v. S.E.D. Labs.*, 2000-NMCA-034, ¶ 26, 128 N.M. 768, 999 P.2d 412 ("We review substantial evidence claims only if the appellant apprises th[is] Court of all evidence bearing upon the issue, both that which is favorable and that which is contrary to [the] appellant's position."). In the interest of completeness and finality, we exercise our discretion to address the issue.

**{15}**     A stipulated judgment, otherwise known as a consent judgment, "is a negotiated agreement between the parties that is entered as a judgment of the court." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 22, 125 N.M. 376, 961 P.2d 1283. "[S]tipulated judgments have characteristics of both judgments and contracts." *Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 29, 388 P.3d 998. Stipulated judgments are "similar to a judgment because [they are] entered and enforceable as a judgment; however, [they are] like a contract because [their] terms and conditions are reached by the mutual agreement of the parties." *Pope*, 1998-NMCA-103, ¶ 22. Stated more clearly, stipulated judgments are "achieved by negotiation and settlement, rather than by a full-blown, contested adjudication of all issues." *Id.* ¶ 27 (internal quotation marks and citation omitted). "As a general rule, a stipulated judgment is not considered to be a judicial determination, but a contract between the parties." *Allred*, 2017-NMCA-019, ¶ 29 (alteration, internal quotation marks, and citation omitted). As such we look to contract law. "Contract interpretation is a matter of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803.

**{16}**     "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 7, 115 N.M. 665, 857 P.2d 776. Importantly, in order for a binding contract to exist "there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope*, 1998-NMCA-103, ¶ 11. Parties mutually assent "when they have the same understanding of the contract's terms; where they attach materially different meanings to the terms, there is no meeting of the minds." *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 20, 134 N.M. 630, 81 P.3d 573. "Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Pope*, 1998-NMCA-103, ¶ 13.[3]

---

[3]We disagree with the district court's assertion that its oral acceptance of the parties' agreement constituted an "order." The general rule is that oral rulings are not in any sense final, but rather are subject to modification—sua sponte by the court or by motion—at any time prior to entry of a formal

**{17}** The record—in particular the official translation of the conversation—demonstrates that Father affirmatively agreed to the Agreements. Mother's counsel proposed terms—that Father agreed to—for sole legal and physical custody with visitation on a "typical one third two thirds" timing. The district court made sure to clearly delineate whether it was sole legal custody, sole physical custody, or both. Mother's counsel laid out that the social security benefits would follow the children. He then noted that there was a sticking point between the parties regarding the home and Father's 401k, but the parties agreed that Mother would get the home and Father would get the 401k. They also agreed to parentage of the eldest child. After a discussion about the social security benefits requiring a divorce decree, Father agreed that Mother would get the home and custody of the children, and Father would get the 401k. Mother then brought up the issue of the trailer and the tools inside the trailer. Father objected because their agreement was that "she would keep the house, keep the children and she was going to leave me be," and clarified that Father "would keep everything, all [his] things but she would only keep the house and the children." Later in the hearing Father stated, "That's why I agreed with [Mother], you see, that she is going to keep the house, the children, and she would just leave me alone, that was it. That was the agreement. House, the children, and she would leave me alone." Eventually, Mother agreed that Father would take the trailer. After the issue about the trailer was cleared up, the district court laid out the individual terms of the Agreements that Father had previously agreed to multiple times—that sole legal and physical custody of the children, the home, the social security, EBT, and Medicaid benefits all went to Mother while Father kept the trailer, its contents, and the 401k benefits. Father specifically agreed to issue a warranty deed for the home to Mother. The evidence demonstrates Father knowingly and voluntarily agreed to the terms of the Agreements during the May 27, 2020 hearing.

### III. Father's Argument That the Agreements Were Unconscionable Is Unpreserved

**{18}** Father next argues that the Agreements were unconscionable because he was entitled to the home and the 401k, therefore he did not need to negotiate away that property. He also argues that he was unrepresented and did not understand the terms of the Agreements.

**{19}** Father does not explain where in the record these arguments were preserved. *See* Rule 12-318(A)(4). Upon our review of the record, Father did not preserve these arguments. *See Benz*, 2013-NMCA-111, ¶ 24. After Father first objected to the terms of the Agreements during the November 5, 2020 hearing, the district court told the parties that the proper procedural avenue to object to the agreements was through a motion to

---

written order. *See In re Adoption Petition of Rebecca M.*, 2008-NMCA-038, ¶ 9, 143 N.M. 554, 178 P.3d 839 (noting our Supreme Court "has repeatedly held that the oral comments of a judge are not binding and that only a written judgment reflects the court's decision"). The most proper procedure below would have been for Mother to file a motion for enforcement of the agreement, or for Father to have filed a proper motion denying that there was an agreement. That would have prompted a vehicle to examine the parties' understanding of the conversation at the May 2020 hearing. None of that occurred here. The parties apparently ignored the events of the May 2020 hearing, which understandably frustrated the district court at their next meeting.

reconsider the order after a written order was filed. Father did not do so. Before the order on the Agreements was entered, he instead filed a motion for presentment hearing, asserting that Father "withdraws his acquiescence to the purported agreement of May 27, 2020" and requested a "presentment hearing to discuss the order on the motion for summary judgment." The district court held a presentment hearing. During the March 2021 presentment hearing, Father attempted to argue again that the district court did not enter an order on the Agreements at the May 2020 hearing. Father made no argument about the unconscionability of the Agreements. Father did not file any motions once the final order was filed addressing the unconscionability—or any other issue—with the final order. Thus, Father's arguments are unpreserved. *See Crutchfield*, 2005-NMCA-022, ¶ 14.

## IV.    The District Court Did Not Err in Denying Father's Motion for Summary Judgment and Not Going to Trial

**{20}**    Father's final argument is that the parties should have gone to trial and the district court should have ruled on Father's motion for summary judgment.

**{21}**    As we noted above, Father agreed to the Agreements at the May 2020 hearing. After this hearing, Father spent months insisting that he did not make an agreement at that hearing. During that time, he filed a motion for summary judgment and Mother requested an evidentiary trial on the merits. Given the parties had agreed in open court on the division of property, child custody, child support, the social security, EBT, and Medicaid benefits, the requests for summary judgment and an evidentiary hearing were moot. *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 ("A case is moot when no actual controversy exists, and the court cannot grant actual relief." (internal quotation marks and citations omitted)). Therefore, it was not an error for the district court to deny the motion and decline to hold a trial. *Cf. Crutchfield*, 2005-NMCA-022, ¶ 36 ("A reviewing court generally does not decide academic or moot questions.").

## CONCLUSION

**{22}**    We affirm.

**{23}    IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**

**retired, Sitting by designation**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**